(No. 28116.—

(No. 28117.—

HERLIHY MID-CONTINENT COMPANY, Appellee and Appellant, *vs.* THE SANITARY DISTRICT OF CHICAGO, Aplant and Appellee.

*Opinion filed March 21, 1945—Rehearing denied May 17, 1945.*

SHEEHAN & CRILLY, of Chicago, for Herlihy Mid-Continent Company.

ERNEST BUEHLER, and JOHN H. BISHOP, both of Chicago, for the Sanitary District.

Mr. JUSTICE MURPHY delivered the opinion of the court:

On September 10, 1931, Herlihy Mid-Continent Company, referred to herein as plaintiff, entered into a contract with the Sanitary District of Chicago, designated herein as defendant, under the terms of which plaintiff was to construct division D of the Calumet sewage works extension. The contract provided that defendant's chief engineer should furnish monthly estimates of the amount completed, and that 87½ per cent of such estimates should be paid monthly, the balance to be retained by defendant until the project was completed. Defendant did not furnish such progress estimates and plaintiff discontinued

work December 24, 1931, and did not resume until December 26, 1933. When the operations were renewed, defendant ordered certain revisions which eliminated work and materials that under the contract would have cost approximately $245,000. The structure was completed and accepted by defendant November 24, 1936. Final estimates of the amount due were made by defendant's chief engineer and the balance due thereunder was paid.

This suit was started to recover damages which plaintiff claimed it sustained by reason of the delay of approximately two years, and by reason of the loss of profits it would have received but for the defendant's revision orders. Other items, including overhead, certain fixed charges and indirect expenses were included. The cause was tried before the court without a jury and resulted in a judgment holding plaintiff entitled to recover damages in the sum of $720.84. On appeal the Appellate Court affirmed that part of the judgment which denied plaintiff's right to damages occasioned by the delay in the prosecution of the work. On the claim of damages for loss of profits, overhead and other items, the court found for plaintiff and entered judgment in its favor for $49,238.51.

Plaintiff filed a petition for leave to appeal from that part of the judgment denying its claim to delay damages. That is cause No. 28117. Defendant petitioned for leave to appeal from the judgment entered against it. This is cause No. 28116. The two causes were consolidated in this court and both petitions allowed.

The facts pertinent to the questions presented in No. 28117 are not in dispute. Plaintiff's bid, upon which the contract was awarded, was $2,182,796.65. Defendant planned to finance this project and others by bond issue. Three of such issues had been authorized prior to the date of the contract, in amounts of $180,000, $950,000 and $20,300,000, respectively. Before the contract was awarded, the proceeds from some of the bonds issued and

sold had been used in payment of certain engineering work. Other proceeds remained in defendant's bond account, so that on October 31, 1931, said account showed a balance slightly in excess of $475,000. On said date, defendant used $475,000 of said account in buying its own tax anticipation warrants.

The evidence shows that when the work was suspended, December 24, 1931, there was due plaintiff, according to estimates, the sum of $107,646.42. This was not paid until December 29, 1932. Defendant's failure to furnish the progress estimates and make payments thereon caused plaintiff to suspend operations, which cessation continued to December 26, 1933. In the interim, defendant obtained a loan from the Federal government and work was resumed according to contracts and the revision orders referred to in the second part of this opinion.

In this branch of the case, plaintiff seeks to recover damages sustained by the suspension of work. The parties stipulated that if plaintiff was entitled to recover in any sum the amount would be $228,339.99. Included in this total is additional office overhead, equipment rental, increased cost of material and other items. Parties are in accord that plaintiff's right to recovery is dependent upon the meaning and effect of article 30 of the contract. It is as follows:

"UNAVOIDABLE DELAYS.

Art. 30. Should the Contractor be obstructed or delayed in the commencement, prosecution or completion of the work hereunder by any act or delay of the Sanitary District or public utility company whose services are required in the prosecution of work under this contract, or by unavoidable acts or delays on the part of transportation companies in transporting, switching or delivering material for such work, or by acts of public authorities, or by riot, insurrection, war, pestilence, fire, lightning, earthquake, cyclone or through any delays or defaults of other parties under contract with said Sanitary District or due to unavoidable delays in obtaining the specified materials or equipment for said work, or due to strikes, or to delays which result in performing work under

abnormal weather conditions beyond such as usually occur during the times specified herein, or to other causes, which causes or delays mentioned in this article (Article 30) hereof, the Engineer shall determine to be entirely beyond the control of the Contractor, then the times herein fixed for the completion of said work to the extent specified shall be extended for a period equivalent to the time lost by reason of any of the aforesaid causes mentioned in this article (Article 30). No such allowance of time shall be made, however, unless notice in writing of a claim therefor is presented to the Engineer before the thirtieth of each succeeding month of all delays occurring within the preceding month, and the Contractor shall satisfy the Engineer that the delays so claimed are unavoidable and substantial, and could not be reasonably anticipated or adequately guarded against.

"It is further expressly understood and agreed that the Contractor shall not be entitled to any damages or compensation from the Sanitary District on account of any delay or delays resulting from any of the causes aforesaid in this article (Article 30), except compensation for extra premiums paid by the Contractor on his bond and for wages and salaries of employees and other extra expense of the Contractor that is necessary only for the proper maintenance of the work and of the plant and equipment of the Contractor during or on account only of a delay or delays caused by the Sanitary District or other contractors for said Sanitary District, or by public authorities as aforesaid. The Engineer shall determine the number of days, if any, that the Contractor has been so delayed, and the amount of such extra costs to the Contractor due to said delay or delays and the amount of extra compensation to be paid to the Contractor therefor, and his decision shall be final and binding upon both parties to this contract."

This section, except as to one matter hereinafter referred to, is the same as article 32 in the contract considered in *Underground Construction Co.* v. *Sanitary District*, 367 Ill. 360. In that case the plaintiff contractor had agreed with the defendant herein to do certain construction work. The contractor proceeded with the performance of the work until it was about 70 per cent completed. The defendant discontinued issuing its engineer's progress certificates and making monthly payments, whereupon the contractor suspended operations under the contract. Later the amounts due on the engineer's estimates at the time

of suspension were merged in a judgment and defendant paid the same. Plaintiff brought a separate action to recover damages caused by the delay. It was found that the cause of such delay was defendant's failure to issue the progress estimates and make the monthly payments. It was also found that defendant's failure to perform was due to lack of available funds. It was held that a contractor engaged to do construction work under such a contract had a right to recover damages sustained by a delay which had been brought about by the contractee's default. But it was found that by article 32 of the contract the contractor had agreed to waive all such damages. The *Underground case* is conclusive on the right of a contractor to recover from a contractee damages which are caused by a delay brought about by the contractee's default. The parties are in accord on this general proposition of law. For an annotation on this point, see 115 A.L.R. 65.

In support of plaintiff's contention that it is entitled to delay damages, it urges that article 30 should be construed as referring solely to unavoidable delays. Such a construction would limit recovery of delay damages to those cases where the delay could have been avoided. The word "unavoidable" in article 30, did not appear in article 32 of the contract discussed in the *Underground case*. This difference in language is used by plaintiff to distinguish the two cases. Attention is called to the title of article 30, which is "Unavoidable Delays," and to the provisions in the contract where it refers to "unavoidable acts or delays on the part of transportation company," etc. and "unavoidable delays in obtaining the specified materials or equipment," etc. The title "Unavoidable Delays" is a mere recital and can not be construed as limiting or controlling matters covered by clearly expressed stipulations. (*Chicago Daily News, Inc.* v. *Kohler*, 360 Ill. 351; *Charles*

*I. Hosmer, Inc.,* v. *Commonwealth,* 302 Mass. 495, 19 N. E. 2d 800.) Plaintiff also seeks to invoke such fundamental rules of construction as that a contract prepared by a defendant must be construed most strongly against him; requiring application of the test as to what meaning and intent an ordinary person would attach to the language used; and that a strained construction will be adopted to prevent an injustice.

In construing a contract, the primary object is to ascertain the intention of the parties. (*Decatur Lumber and Mfg. Co.* v. *Crail,* 350 Ill. 319.) That intention must be determined from the language in the contract. If the intention may be ascertained from the wording of the contract, rules of construction have no application. (*Domeyer* v. *O'Connell,* 364 Ill. 467.) No words can be added to or taken from a contract and thereby change the plain meaning of the parties as expressed therein. (*Stevens* v. *Felman,* 338 Ill. 391.) Nor may the courts engage in surmises as to what the parties intended but which they failed to express.

The first paragraph of article 30 deals with causes of delay. It specifies many causes, which, if they occur, will extend the time within which the contractor may perform. The occurrence of one or more of them extends the time for completion for a period equivalent to the time lost by the delay. The causes of delay specified in article 30 readily fall into ten general classes. They are: (1) any act or delay of the district; (2) any act or delay of a public utility whose services are required in the prosecution of the work; (3) delays on the part of transportation companies in transporting and delivering material; (4) delays caused by acts of public authorities; (5) delays by riot, insurrection, etc.; (6) delays or defaults of other parties under contract with the Sanitary District; (7) delays in obtaining specified materials or equipment for the work; (8) delays due to strikes; (9) delays which

result in performing work under abnormal weather conditions, and (10) other causes which the district's engineer shall determine to have been entirely beyond the control of the contractor.

The restriction on causes of delay which arise from the use of the word "unavoidable" is limited to delays in the third group where it is stated "unavoidable acts or delays on the part of the transportation company" and to delays in the seventh class where it is provided "unavoidable delays in obtaining the specified materials or equipment." It will be observed that in the part of the first paragraph which deals with delays caused by the Sanitary District, the following language is used: "Should the contractor be obstructed or delayed in the commencement, prosecution or completion of the work hereunder by any act or delay of the Sanitary District." The term "any act or delay" of the district is broad and comprehensive. It is also plain and understandable. It bears no construction except that it shows an intent to include all delays caused by the district whether they be unavoidable or such that they could have been avoided by the district.

The first paragraph deals only with delays that will furnish a basis for an extension of the time of performance. It makes no reference to the contractor's damages caused by delays. By its terms the parties agreed as to what causes of delay would support an extension of time for completion of the work comparable to the time lost by the delay. It makes no distinction between causes which are unavoidable and those that could have been avoided by the defendant. In either case, plaintiff was entitled to an extension of the time for performance. That part of article 30 which deals with delays caused by the act of the defendant is identical to the part of article 32 involved in the *Underground case* which provided for extension of time for delays brought about by the default of the defendant. There is nothing in other parts of arti-

cle 30 which supports a construction in this case different from that given the like provision in the *Underground case.*

Reference is made to the fact that defendant's default in the *Underground case* was because there were no funds available with which to pay the installments, while in this case there was $475,000 in the bond account which defendant used for the purchase of its tax warrants. This does not call for a different construction of the contract. In either event, it was the failure of the defendant to make the payments that caused plaintiff to stop the work. Whether the defendant had an excuse which justified its act is beside the point.

We now come to the second paragraph of article 30. It deals only with damages which the parties thought the plaintiff might sustain by reason of delayed performance. In lieu of specifying each cause of delay mentioned in the first paragraph, the parties used the all-inclusive phrase "on account of any delay or delays resulting from any of the causes aforesaid in this article," and agreed that the plaintiff (contractor) should "not be entitled to any damages or compensation from the Sanitary District on account of" such delays except as to certain items. The items of damages included in the exception have been agreed upon, and defendant paid plaintiff $42,711.71 for the same. There is no basis for construing this paragraph as limiting plaintiff's waiver of damages. The language is explicit that plaintiff shall not receive any damages which may arise from any delay caused by defendant.

Plaintiff cites cases from other jurisdictions which contain statements to the effect that a contractee may not agree with a contractor for a waiver of damages caused by delayed performance where such delay was brought about by the act of the contractee. An examination of the cases cited shows that they are distinguishable on the facts or the provisions of the contract. Such a holding would be contrary to the decision in the *Underground case.*

Plaintiff advances the proposition that the money derived from the sale of bonds was a trust fund to be used in making payments under the contract and that defendant's use of it in the purchase of tax warrants was an illegal diversion of such funds and that article 30 was never intended to protect the defendant against the consequences of such an act. We will not determine whether the money in the bond account was a trust fund or whether the use of it was a diversion, as the delay in performance was caused by defendant's failure to pay the installments and whether it was justified in such default is not an issue under the terms of this contract. The judgment of the Appellate Court on the questions presented in No. 28117 was correct.

The facts pertinent to the questions presented in cause No. 28116 are as follows. On December 21, 1933, a second contract was entered into which amended and supplemented the one dated September 10, 1931, in certain particulars. It is not claimed, however, that there is anything in the supplemental agreement that alters or modifies article 6 of the first contract, which is the provision to be construed in this case. On December 26, 1933, the work was resumed under the two contracts and proceeded until it was completed and accepted. On February 8, March 15, April 26, and June 7, 1934, defendant's engineer, pursuant to authority granted by defendant, issued certain orders revising the structure to be constructed under the first contract. In some instances the revisions reduced the quantities of certain items, in others there was an increase, and in still others there was extra and additional work added. The work to be done under the first contract specified ninety-four separate items. The bids as to eight of these were on a lump-sum basis, and eighty-six were on a unit-price basis. The bid on the lump-sum items was a fixed amount for the specified work, and as to those on

which the bid was on a unit basis the price was fixed for the estimated quantities called for by the contract.

The pertinent part of article 6 of the first contract is as follows:

"Art. 6. The Sanitary District reserves the right to make any changes in the specifications and plans which may be deemed necessary either before or after beginning any work under this contract, without invalidating this contract; provided, that if alterations are made, the general character of the work as a whole is not changed thereby."

It will be observed that the defendant's right to make changes in the specifications and plans was, in the first instance, limited to what "may be deemed necessary," and secondly, to those necessary changes which would not alter the general character of the work. The specific question is as to whether the changes provided for in the revision orders were "necessary" changes and, if found necessary, whether they altered the "general character of the work proposed as a whole." There is nothing in the contract which defines what is meant by necessary change or alteration. Other provisions of the contract vested in the defendant's chief engineer the authority to supervise the work and in certain cases gave him the power of an arbitrator, and to settle disputes between the parties as to conflicting claims. Under such powers, it is to be assumed that it was intended that the defendant's chief engineer should determine the necessity of altering the plans and specifications provided for in the contract.

The Appellate Court found that the "omissions and additions" included in the several orders of revision consisted of twenty separate items, and that they resulted in a reduction of $246,143.95 in the contract price. That court also found that the changes resulted in extra and additional work amounting to $26,997.50. There is considerable evidence as to the effect the revision orders had

upon the quantity of material used. They reduced the amount of reinforcing steel by 1,491,790 pounds and deducted 3900 cubic yards of concrete. The orders eliminated one settling tank made of reinforced concrete and 95 feet in diameter. Another eliminated a concrete wall 425 feet long between two rectangular aeration tanks. Other parts provided for in the original contract were omitted entirely or changed by the revision orders.

Defendant's act in ordering the revisions in the plans and specifications cannot be defended on the theory that they were necessary to the proper operation of the project, for defendant's chief engineer on January 18, 1934, addressed a letter to an official of the Public Works Administration in reference to said revisions. It appears that defendant was obtaining financial aid from the Federal government through the agency of the Public Works Administration and, to comply with requirements and conditions upon which such aid was extended, defendant's engineer submitted a report as to certain proposed revisions. In such letter it was said: "None of these revisions is considered a necessary change, but they are proposed as a measure of economy for the sole purpose of reducing the cost of the contract * * *. These changes have arisen as the result of experiments and operating observations made at our North Side treatment works during the past two years while the construction work has been shut down. As hereinbefore stated, they can not be classed as necessary changes but are changes which will result in savings to the District, either in construction or operation, or both." Defendant contends said letter was not admissible, but, in view of the authority defendant's chief engineer could exercise under the contract over the work, the letter is admissible for the purpose of showing defendant's reason for ordering the revisions. It will be observed that this letter was written less than one month after the work

was resumed and a few days prior to the date of the first revision order. It is obvious that the changes were not deemed necessary from an operative standpoint.

The next question is as to whether the revisions made changed "the general character of the work as a whole." "Character" is defined by Funk & Wagnalls Practical Dictionary as "that by which a thing is specially known or distinguished; a quality, a property, a distinctive feature." The use of the word "general" would serve to lessen the definiteness of such distinguishing features. It would not depend so much on the reduction of the cost of the project as it would upon the features that distinguish this particular sewage treatment works from other sewage works. The omission of one settling tank 95 feet in diameter, of a wall over 400 feet in length, the reduction of the operation gallery superstructure from two stories to one, are changes which would unquestionably affect the general character of the work to be performed under the contract. The Appellate Court was correct in its interpretation of the contract and in finding that the alterations made by the reduction orders were changes in the general character of the work. It would follow that the defendant had no right under the contract to make the alterations and changes as provided in its revision orders and that by so doing it became liable to plaintiff for damages sustained. The alterations made were integral parts of the project.

After finding that the alterations made by the revision orders were not permitted by the contract, the Appellate Court adopted the figures as to the amount of damages as submitted in the evidence. It found the total damage, including the damage that accrued on the effluent conduit extension, would total $56,149.70. In arriving at this figure the court adopted defendant's computation of the loss of profit which plaintiff would sustain if recoverable. To this total the court applied a credit of $6,911.19, which

was an amount derived from the computation involving the construction of the effluent conduit extension. There is no question as to the correctness of the amount of the item, but plaintiff contends that the contract under which the extension was built was a new contract, separate and independent from the other. The evidence shows that the original plans refer to the effluent conduit as the "proposed effluent sewer." The witness Herlihy, who testified for the plaintiff, stated that it was about 517 feet long and ran in a northerly and southerly direction and was an extension of the effluent conduit provided for in the original contract. He testified that the effluent conduit provided for in the original contract was built in 1933 and 1934, and that later another contract was awarded to them, and the extension was constructed according to the later contract. Under such evidence, we conclude that the Appellate Court erred in granting defendant the credit for $6,911.19.

For the reasons assigned, that part of the judgment which is appealed from in cause No. 28117 is affirmed; that part of the judgment which is appealed from in No. 28116 is reversed and judgment is ordered to be entered in this court against the defendant sanitary district in the sum of $56,149.70.

*No. 28117, Judgment affirmed.*
*No. 28116, Reversed, with judgment here.*