UNICON MANAGEMENT CORP.,
Plaintiff-Appellee,

v.

CITY OF CHICAGO, Defendant-
Appellant.

No. 16831.

United States Court of Appeals
Seventh Circuit.

Dec. 20, 1968.

Raymond F. Simon, Brendan Q. O'Brien, Chicago, Ill., for defendant-appellant.

Herbert Morton, Richard A. Greig, John O. Snook, Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, FAIRCHILD and CUMMINGS, Circuit Judges.

CUMMINGS, Circuit Judge.

This is an interlocutory appeal taken under Section 1292(b) of the Judicial Code (28 U.S.C. § 1292(b)) from the district court's denial of a motion to dismiss the complaint, filed by the defendant City of Chicago. This diversity action was brought by Unicon Management Corp., formerly the Malan Construction Corp., a New York corporation, to recover damages assertedly caused by the City's delays in approving wall panels and doors for the Eastern Airlines hangar built by Unicon at O'Hare International Airport in Chicago.

In April 1960, Unicon and the City executed a contract for the construction of this hangar for $3,794,000. The contract required Unicon to complete its work by May 16, 1961. The complaint alleged that the City notified Unicon to proceed with its work even though the essential site work and grading had not yet been completed. The complaint also charged that the City failed to approve wall panels for the hangar for 10 months and doors for 4 months.[1] Count I claimed that these delays caused Unicon to incur $525,000 in additional costs and expenses in the performance of its contract work. Count II is a *quantum meruit* claim for the same amount. The complaint labeled the City's failure to approve these items promptly as "arbitrary, capricious, and unjustified procrastination."

The City's motion to dismiss relied on Section GC120 of the contract as relieving it of any liability for these delays. That Section provides:

"GC120 PROVISIONS RELATIVE TO DELAY

"(A) Anything contained in the conditions or specifications document to the contrary notwithstanding, it is agreed that the following provisions relative to unavoidable delay shall be controlling:

"1. Should the Contractor be obstructed or delayed in the commencement, prosecution or completion of the work hereunder by any act or delay of the City or by unavoidable acts or delays on the part of transportation companies in transporting, switching or delivering material for said work, or by acts of public authorities, or by riot, insurrection, war, pestilence, fire, lightning, earthquake, cyclone, or through any delays or defaults of other parties under contract with said City or due to unavoidable delays in obtaining the specified materials or equipment for said work because of controlled materials, priorities, allocations, or prohibitions established by the United States of America, or due to strikes that cause unavoidable delays in performing said work, or to other unavoidable causes (except wet or cold weather), and provided the Purchasing Agent shall determine that any of such causes or delays were entirely beyond the control of the Contractor, then

---

1. According to a memorandum of law filed below by Unicon, the delays were the fault of the City's tenant, Eastern Airlines.

the times herein fixed for the completion of said work shall be extended for a period equivalent to the time lost by reason of any of the aforesaid causes or delays mentioned herein.[2] No such allowance of time shall be made, however, unless notice in writing of a claim therefor is presented to the Purchasing Agent before the 30th day of each succeeding month of all delays occurring within the preceding month, and the Contractor shall satisfy the Purchasing Agent that the delays so claimed are unavoidable and substantial, and could not be reasonably anticipated or adequately guarded against, and said allowance of time is authorized in writing by the Mayor, Comptroller and Purchasing Agent.

"2.  It is further expressly understood and agreed that the Contractor shall not be entitled to any damages or compensation from the City, or be reimbursed for any losses, on account of any delay or delays resulting from any of the causes aforesaid. The Commissioner and the Purchasing Agent shall determine the number of days, if any, that the Contractor has been so delayed and his decision shall be final and binding upon other parties to this contract upon authorization in writing as hereinbefore set forth."

The district court construed this provision as exonerating the City from liability only for unavoidable delays. The court was influenced by the introductory clause of GC120 and considered the body of the Section to be too ambiguous to immunize the City from paying damages for any delays. The motion to dismiss was denied on the ground that under GC120, Unicon did not waive its right to damages for delay. In view of the Illinois cases construing similar contractual language, we are compelled to disagree with this disposition.

In our view, this case is controlled by Herlihy Mid-Continent Co. v. Sanitary District, 390 Ill. 160, 60 N.E.2d 882 (1945). Article 30 of the contract between Herlihy and the Sanitary District was the forerunner of Section GC120 of the instant contract. Although Article 30 was entitled "Unavoidable Delays," the Illinois Supreme Court held that the title was "a mere recital and can not be construed as limiting or controlling matters covered by clearly expressed stipulations" (390 Ill. at p. 165, 60 N.E.2d at p. 885). Similarly here, the introductory clause of GC120 must be disregarded in view of the unlimited title and the subsequent language of paragraph 1 of GC120 referring to "any act or delay of the City."

Moreover, since, as the trial judge realized, the term "unavoidable" in the first paragraph of GC120 is used to mean unavoidable by the contractor itself, it is immaterial whether the delay could have been avoided by the City or a third party. The word "unavoidable" is used to describe certain contingencies and not others. Thus, war, riot, insurrection and acts of God are grounds for extension of time without regard to whether they could somehow have been avoided. Delays in transportation, on the other hand, or delays in obtaining materials due to government priorities or controls will excuse timely performance only if the contractor could not have avoided the delay. The final proviso of paragraph 1 of GC120 requires that as a prerequisite to relief from the deadlines, the "Purchasing Agent shall determine that any of such causes or delays

2.  Unicon was allowed time extensions of 122 days. The City has not claimed damages from Unicon for its failure to complete the hangar until 265 days beyond the original completion date.

were entirely beyond the control of the Contractor." This same meaning must be applied to the word "unavoidable" in the introductory paragraph lest the interpretation of the word in the introduction render the use of the same word in the body of the provision meaningless. Our reading of the record convinces us that the City did not concede any other interpretation below. At most, counsel for the City argued that any delay such as that alleged here was, in fact, unavoidable by the City. That is not to say that only unavoidable acts of the City are covered by GC120. As held in the *Herlihy* case with respect to the identical first sentence of paragraph 1 of Article 30 (390 Ill. at p. 167, 60 N.E. 2d at p. 886):

> "It will be observed that in the part of the first paragraph which deals with delays caused by the Sanitary District, the following language is used: 'Should the contractor be obstructed or delayed in the commencement, prosecution or completion of the work hereunder by any act or delay of the Sanitary District.' The term 'any act or delay' of the district is broad and comprehensive. It is also plain and understandable. It bears no construction except that it shows an intent to include all delays caused by the district whether they be unavoidable or such that they could have been avoided by the district."

The second paragraph of Section GC120 is patterned on the second paragraph of Article 30 in the *Herlihy* case. It was there held that "The language is explicit that plaintiff shall not receive any damages which may arise from any delay caused by defendant" (390 Ill. at p. 168, 60 N.E.2d at p. 887). Under that holding Unicon may not recover damages for any delay caused by the City.

Unicon further argues that GC120 should not be construed to apply to bad faith acts or omissions on the part of the City. Assuming *arguendo* that an allegation of bad faith would be sufficient to state a cause of action for damages for delay despite a no-damages clause, we cannot agree that a case of bad faith could be made out on the undisputed facts of the present case. Unicon acknowledges that the delays resulted from demands made by the City's prospective tenant that approval be postponed until it could be determined whether similar equipment installed at another airport would perform adequately over a period of time. The complaint characterizes the City's action as "procrastination," and no allegation is made that the City had any intent other than to satisfy the tenant for whom the hangar was being built. The cases relied on by Unicon, such as Housing Auth. of City of Dallas v. Hubbell, 325 S.W. 2d 880 (Tex.Civ.App.1959), and Anthony P. Miller, Inc. v. Wilmington Housing Auth., 165 F.Supp. 275 (D.Del.1958), are distinguishable as involving alleged "willful" acts or "tortious" intent. The Illinois cases cited by the contractor also recognize that more than procrastination is required before a case of bad faith is made out. See Nelson v. Board of Trade, 58 Ill.App. 399, 415 (1895).

Unicon attempts to take statements in other Illinois cases out of context so as to equate "arbitrary, capricious, and unjustified procrastination" with bad faith or fraud, but we are persuaded that to do so would be to render the no-damages-for-delay provision essentially meaningless. The parties agree that no issue of fact remains in this case. There can be no quarrel with the fact that the City delayed completion of the contractor's work, but delay, or procrastination at the request of a tenant, is what the City bargained for and is not tantamount to bad faith.

Unicon argues that it would be unfair to deny recovery of its additional costs and expenditures arising from the City's delays. A similar argument was re-

jected in Underground Construction Co. v. Sanitary District, 367 Ill. 360, 371, 11 N.E.2d 361, 366, 115 A.L.R. 57 (1937), where the court stated:

> "Plaintiff argues that the record shows large costs involved in rehabilitating and cleaning equipment and large rental values, all of which were lost. The only answer that can be made to such claim is the one the parties themselves have provided. Such items of cost might, by general or specific terms, have been included in the contract, but, not only were they not included, but the contract specifically declares that the plaintiff shall not be entitled to any damages or compensation for delay except those there enumerated. This is the contract of the parties, and, however strongly we might feel that plaintiff has been more severely damaged, this court can declare the rights of the parties only by the contract, as the language of that instrument dictates." [3]

The City bargained for the right to delay and perhaps paid more for the hangar by virtue of its insistence on Section GC120. See "Government-Caused Delays in the Performance of Federal Contracts, the Impact of the Contract Clauses," 1963 Military Law Review 1, 46–47 (Oct. 1963). Unicon could have protected itself by increasing its price or by refusing to agree to a contractual provision that had already been construed as a waiver of delay damages. In any event, the *Underground* and *Herlihy* cases are controlling and require us to conclude that under Section GC120 Unicon waived any right to damages from the City for these delays. Therefore, the motion to dismiss should have been granted.

Reversed.

3. We find the attempted distinction of the *Underground* and *Herlihy* cases as involving non-payment of installments rather than prevention of performance unpersuasive, as did the court in Ryan Co. v.

Sanitary District, 317 Ill.App. 549, 571, 47 N.E.2d 576 (1943), affirmed, 390 Ill. 173, 60 N.E.2d 889 (1945).