CONTRACTING & MATERIAL COMPANY, Plaintiff-Appellant, *v.* CITY OF CHICAGO, Defendant-Appellee.

(No. 58552;

First District (5th Division)—June 21, 1974.

Robert G. Lussier, of Chicago, for appellant.

Richard L. Curry, Corporation Counsel, of Chicago (William R. Quinlan and Richard F. Friedman, Assistant Corporation Counsel, of counsel), for appellees.

Mr. JUSTICE BARRETT delivered the opinion of the court:

Plaintiff appeals from a judgment in a contract action following a bench trial. The trial court found: (a) that defendant did not breach its

construction contract with plaintiff; (b) that defendant was not wrongful or inequitable in any of its dealings with plaintiff; and (c) that plaintiff breached the construction contract by failing to work two 8-hour shifts each day, 5 days a week during the times in question. In conclusion, the trial court found all issues in the case in favor of defendant and denied recovery by plaintiff.

We reverse the judgment.

On appeal, the basic issue is one of determining the respective rights and obligations of the parties under the terms of the construction contract. Specifically, we are asked to determine whether the contract gave plaintiff the right to time extensions and whether the so-called "delays damages clause" of the contract bars recovery in this case.

Originally, this action was brought by plaintiff in connection with a public construction contract for the South Lake Shore Drive Interchange in Chicago. The complaint contained two counts. Count I claimed $198,-261.55, plus interest for expenses incurred as a result of accelerating work during the time defendant was considering plaintiff's requested extensions of time, and also during the period following defendant's refusal. Count II claimed $143,125.89 allegedly owed to plaintiff as the 2 percent retained percentage of the contract price. During the trial, defendant agreed to pay the retained percentage of $143,125.89, and Count II was dismissed. When the case was finally submitted, plaintiff claimed a total of $185,830.64 plus interest dating from June 20, 1968.

The contract at issue was awarded to plaintiff after formal advertisement by the City. Defendant prepared all of the contract documents so that plaintiff merely filled in its original contract price calculation of $7,116,220.56. After adjustments, the final contract price was calculated at $7,154,572.56.

The contract was approved on July 7, 1965, and provided that the work was to be performed and completed within 450 calendar days from the date specified for commencement of the work. On July 14, 1965, defendant notified plaintiff to begin work on July 15, 1965. Consequently, the original completion date was October 8, 1966.

Plaintiff commenced work on the project on July 15, 1965, and proceeded until December 3, 1965, when defendant issued a written suspension order which directed plaintiff to halt work. In January, 1966, defendant lifted the suspension order and directed plaintiff to resume work. The resulting delay occasioned by the suspension order was 46 days. During the suspension period, first on December 10, 1965, and again after the suspension order was lifted on February 15, 1966, plaintiff requested that the date for completion of the contract be extended to offset the loss of time caused by defendant's suspension order. Both

requests were rejected by defendant, and the original completion date for the contract remained in effect.

A further delay was encountered when a strike, called by Local 150 of the Operating Engineers Union on April 9, 1966, halted all construction. The strike continued for 51 days and ended May 29, 1966. The resulting delay was 58 days. During the period of the strike and again on May 31, 1966, plaintiff requested an extension of time in order to compensate for work days lost because of the strike delay. Further requests for extensions of time were made in June, July and August, 1966. Despite the repeated requests by plaintiff for extensions of time equivalent to the time losses due to the two delays, defendant refused to extend the completion date of the contract. By a letter dated June 21, 1966, defendant denied the requested time extensions and further pointed out the express requirement in the contract that the contractor work two 8-hour shifts, 5 days per week as a prerequisite for extension allowances. Except for 3 or 4 days, plaintiff did not work two shifts a day.

During 1966, defendant maintained that the contract did not entitle plaintiff to any extension of time, and plaintiff was held to the original October 8, 1966, completion date. In August, 1966, in an effort to meet the unextended October 8, 1966, completion date, plaintiff accelerated its work schedule and began to work overtime hours on the project. Plaintiff submitted to defendant certified copies of payroll records as well as a series of letters specifying the premium portion of the overtime hours to be charged to defendant. In each instance, defendant indicated that it had checked the payrolls and found the amounts to be substantially correct.

The subject road was opened to traffic on November 1, 1966, although plaintiff's overtime work continued until November 27, 1966. At that time, plaintiff was still being held to the October 8, 1966, completion date. On January 21, 1967, defendant issued a contract modification which extended contract performance time 46 days to cover defendant's suspension order. On July 12, 1967, defendant granted an extension of 58 days because of the strike delay. The completion date was ultimately extended to April 23, 1967. Although the work was not fully performed until July 24, 1967, defendant accepted this as the final completion date without any penalty to plaintiff.

In December, 1966, plaintiff submitted itemized invoices to defendant for expenses incurred due to overtime work. The amount submitted was $198,261.55. After the invoices were received by defendant, plaintiff was notified that the amount of its claim had been revised downward to $146,410.10, and that the City purchasing agent was being requested to

issue a contract modification in the amount of $146,410.10 to cover the "contractor's cost in the accelerated program." Defendant's reduction schedule attached to the invoice for plaintiff's premium overtime eliminated certain supervisory personnel as not being participants in the accelerated effort and deleted overtime for November, 1966. Defendant claimed that the accelerated work period terminated on October 31, 1966.

On June 20, 1968, defendant further notified plaintiff that invoices had been submitted to the State of Illinois and the Bureau of Public Roads and that they had been returned marked, "non-participating" by the Federal government. Non-participation of the Federal government indicates that Federal funds are not available. After defendant learned of the non-availability of Federal funds, it refused to pay plaintiff for acceleration overtime expenses.

Plaintiff subsequently commenced the instant action to recover its claim for overtime expenses. The essence of plaintiff's case is that defendant wrongfully and inequitably refused to extend the contract performance date to reflect delays caused by the 46-day suspension order and the 51-day strike. Plaintiff also contends that because it was held to the original completion date, it was forced into an abbreviated performance schedule which resulted in the overtime expenses claimed.

Defendant denies that it is liable to plaintiff for overtime expenses and it contends that the original performance date could have been extended only in the instance of City-ordered delay and that in any event, working two shifts per day was a condition precedent to receiving an extension.

OPINION

On appeal, the first issue raised is whether plaintiff was entitled to an extension of performance time as a result of delays occasioned by the City-ordered suspension of work and the Operating Engineers' strike.

■■ In a contract construction case such as this, the contract must be considered in its total form. It is well established that:

> "[A]n interpretation which gives a reasonable meaning to all parts of an instrument will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous; nor should any provision be construed as being in conflict with another unless no other reasonable interpretation is possible." *Hol-Gar Manufacturing Corp. v. United States*, 351 F.2d 972, at 979 (Ct.Cl. 1965). See also *Puszczewicz v. American Oil Co.*, 6 Ill.App.3d 1053, 286 N.E.2d 529; *Wheaton v. Bartlett*, 105 Ill.App. 326; *Egyptian Seed Growers Exchange v. Hollinger*, 238 Ill.App. 178.

Under the terms of the contract (section 2), plaintiff was granted 450 days within which to complete the contract project. Plaintiff argues the 450-day performance period was subject to extensions because of two sections of the contract that appear in the Illinois Standard Specifications. Article 8.5A of the contract states that extensions of time may be granted, *inter alia*, for strikes. Article 8.8 of the Illinois Standard Specifications permits the suspension of work upon order of the City. Based on articles 8.5A and 8.8, plaintiff contends that it was entitled to extensions of the original completion date to restore work days lost during the strike and the suspension order.

Although defendant does not deny that the contract is susceptible to extensions, it alleges that the extensions sought by plaintiff during the contract period were properly refused. The provisions of the contract that defendant relies on appear in section 120 of the City of Chicago Provisions and permit an extension of time for delays caused by the City, but permits no extension for other causes. It further provides that no damages shall be allowed for delays caused by the City. Section 2 of the City of Chicago Provisions states that those extensions of time permitted by section 120 will be disallowed if the contractor fails to work two 8-hour shifts daily.

Defendant argues: (1) that section 120 was intended to supersede all other sections of the contract governing causes for which extensions of time will be granted; (2) that section 120 allows for extensions for no other cause except City-ordered delay; and (3) that working two shifts is a condition precedent to receiving an extension of time. Defendant contends that because plaintiff failed to work two shifts per day, it was not entitled to extensions as requested. Thus, there is a contradiction between the Illinois Standard Specifications of the contract (which plaintiff claims permit an extension of time and recovery of expenses), and sections of the City of Chicago Provisions (which defendant claims absolutely deny liability except for City-caused delay and only then if the contractor works two shifts).

■■ In the case of ambiguous or conflicting contract provisions an attempt must be made to construe the provisions of the contract so as to avoid finding any part of the contract a nullity. (*Puszczewicz v. American Oil Co.*, 6 Ill.App.3d 1053, 286 N.E.2d 529.) Under the law, articles 8.8 and 8.5A must, if at all reasonably possible, be reconciled with section 120 and since articles 8.8 and 8.5A are viable provisions of the contract, due consideration must be given to the two articles in determining the circumstances under which plaintiff was entitled to time extensions. To do otherwise would give defendant potentially unlimited power to suspend work without a reciprocal obligation to grant ap-

propriate extensions. Such a power could easily lead to absurd and unconscionable results. Under such an interpretation the City could reduce performance time at will by virtue of its own suspension order. It seems unreasonable that any contractor would begin performance of a contract job with the knowledge that the performance period could be substantially reduced because of fortuitous or unavoidable circumstances. The courts will "construe a contract as most equitable to the parties and will not give one of them an unfair advantage over the other. A construction that would lead to absurd results should be avoided." *Llewellyn v. Board of Education*, 324 Ill. 254, 288, 154 N.E. 889.

Articles 8.8 and 8.5A must therefore be reconciled with section 120 so that each of the clauses can be given effect. Article 8.5A grants the contractor the right to a time extension for unforeseen causes or those beyond the control of or without the fault or negligence of the contractor. Under the provisions of article 8.5A, plaintiff had a right to time extensions for the general strike which stopped work in April, 1966. The strike was beyond the control of plaintiff and was not caused by any fault or negligence of plaintiff. Furthermore, strikes are included in the "unforeseen causes" provision of article 8.5A. Article 8.5A is a viable basis for granting extensions due to strike delays and since section 120 deals with city-caused delays and has meaning apart from article 8.5A it cannot supersede or negate the meaning of article 8.5A.

■■ Likewise, article 8.8 entitled "Suspension of Work" has a meaning apart from section 120. Article 8.8 deals with suspensions, whereas section 120 deals with delay. Article 8.8 grants defendant the right to suspend work and hold the work in abeyance for the convenience of the City. Section 120 bars delay damages for the causes set forth therein. Article 8.8 expressly provides for recovery of costs incurred as a result of direct orders of suspension. It is quite possible that delays caused by City order under section 120 might occur under circumstances where reasonable men might disagree as to who should shoulder the cost burden of the delay. In this situation, the City is exculpated by section 120. However, in a situation where the City directly orders work stoppage, there is no doubt that the delay caused by this type of order should be the responsibility of the City. Clearly, article 8.8 indicates a credible distinction between the City-caused delays enumerated in section 120, and the suspension orders of article 8.8. Reasonably interpreted, section 120 is inapplicable to direct suspension orders. An 8.8 suspension order falls into the category of a governmental act as provided for in article 8.5A. Under articles 8.8 and 8.5A, plaintiff had a right to a performance date extension because of the December, 1965 suspension order. Section 120 does not apply to the suspension order in the instant case.

■■ By virtue of articles 8.5A and 8.8, plaintiff was entitled to time extensions for the strike and the City suspension order. This entitlement was not dependent upon or related to the provisions of section 120. Since plaintiff's right to extensions of time for performance does not arise from section 120, the double shift requirement of that section does not affect its right to the requested time extensions.

■■ Even if plaintiff were bound by the provisions of section 120, there are numerous factors which weaken the allegedly mandatory nature of the double-shift requirement. The contractor testified that night work was unsafe and led to low-quality construction. The working area was located on an elevated structure over Lake Shore Drive. Arguably, a man working on a narrow beam at night runs a great risk of falling or dropping something into the stream of traffic moving below. Furthermore, there was testimony by the contractor that there was no manpower available after the Operating Engineers' strike. During the strike, there was such extensive unemployment that many individuals left the area. After the strike was over, there was a pronounced manpower shortage. When the contractor attempted to gather work forces, he was able to get only six people who would work on a night shift. In light of plaintiff's good faith efforts to meet the double-shift requirement as well as the hazardous nature of the work involved, we reverse the finding of the trial court that plaintiff breached the contract by failing to work double shifts. In working overtime, plaintiff used the only means available to him for making up time lost during the strike and the suspension order.

Having held that plaintiff was entitled to the extensions it requested, we must now consider the effect of defendant's refusal to grant the extensions until after the original completion date had passed. Plaintiff contends that because the delays were excusable in the eyes of the law and under the express terms of the contract, it was entitled to time extensions restoring the full amount of working time lost. However, on August 8, 1966, plaintiff received a letter from defendant which not only denied the requested extensions but also ordered contract completion according to the original schedule. Plaintiff contends that since it was entitled to more performance time, defendant's action denying the extensions and holding plaintiff to the original contract completion date was tantamount to "acceleration."

We agree.

The concept of contract acceleration is one that has not been directly dealt with in Illinois law. Although on opposite sides of the same coin, acceleration and delay are frequently and inappropriately interchanged. Generally speaking, the concept of "acceleration" is ignored and cases

are decided in terms of "delay." In this instant case, for example, plaintiff's claim is characterized as "acceleration costs" by plaintiff, "delay damages" by defendant, and "acceleration damages" by the trial court.

Acceleration is the process by which the natural or ordinary progress of events is quickened. In the case of a contract, acceleration occurs when the contractor speeds up his work so that he is performing the job at a faster rate than prescribed in the original contract. Commonly, acceleration is achieved by working overtime or working double shifts. Acceleration costs, as claimed by plaintiff, are costs incurred by virtue of the acceleration.

Delay, on the other hand, occurs when there is a slowdown in work. Delays may be caused by either party to the contract. In the instant case, delays were caused by the strike and by the City's suspension order. There is no issue as to fault or justifiability of the delays. The issue is whether plaintiff's claim is based on costs of accelerating the performance to make up for the delays or on damages incurred because of the delays.

■■ In order to justify a finding that work has been accelerated,

> "There must be an express order or some action equivalent to an order to comply with the original completion date without regard to excusable delays." *Peter Kiewit and Sons Co.,* ASBCA, Nos. 9921 and 10440, 1969 BCA ¶ 7510, p. 34811 (Jan. 30, 1969).*

It is clear from the record that plaintiff was excusably delayed and was nonetheless directed by defendant to maintain the original progress schedule and completion dates. Evidence shows that by letter dated August 22, 1966, defendant told the contractor that it was essential for him to exert "whatever efforts are required" to meet the "established completion date of October 8, 1966." When there is a refusal to recognize that an excusable delay has occurred and a refusal to grant a legitimate time extension and an insistence that the contractor is obligated to complete the work on the original completion date, the work has been constructively accelerated.

> "The directions to the contractor to complete the work on time without regard to the excusable delays were the equivalent of an order to perform work at a rate faster than required by the contract." *Mechanical Utilities Inc.,* ASBCA, No. 7466, 1962 BCA ¶ 3556, p. 18,030 (Oct. 31, 1962).

---

* Normally a federal contractor must take his claims to the United States Court of Claims. This can be a lengthy and costly process. An alternate procedural course has been established through a system of tribunals such as the Armed Services Board of Contract Appeals (ASBCA). The ASBCA has jurisdiction to conduct judicial-type hearings to resolve claims arising under contract provisions.

The instant case is clearly a direct example of acceleration and plaintiff's claims in this suit are for increased costs due to the acceleration of the contract performance time.

■■ "In seeking additional compensation for an acceleration of performance, the contractor has the burden of showing that it has encountered specific, excusable delays for which it is entitled to time extensions; that it has specifically requested and documented such extensions from the contracting officer; that the contracting officer failed or refused to grant the extensions; that the government caused the plaintiff to complete the work within the original contract period; and that the plaintiff actually accelerated its performance." *Nolan Brothers Inc.,* ENGBCA, No. 2796, 1970 BCA ¶ 8, p. 38, 419 (April 28, 1970).*

After defendant told plaintiff to make whatever efforts were necessary to meet the October 8, 1966, deadline, plaintiff advised defendant that he would use premium overtime and expected to be reimbursed for this expense. Plaintiff then went ahead with the acceleration and submitted certified copies of payroll records each week to the City engineer. In every instance, defendant advised plaintiff that it had checked the payroll records and found the amounts to be substantially correct.

In a letter dated February 27, 1968, defendant stated that it had audited and corrected the bills for acceleration of the work and had made "determinations." "We will, therefore, request the Purchasing Agent to issue a contract modification in the amount of a hundred forty six thousand four hundred ten dollars and ten cents to cover your cost in this accelerated program." On the basis of this letter, defendant recognized plaintiff's claim to costs of acceleration. Conspicuously absent in the letter is any characterization of the claim as delay damages.

When a contractor is delayed, he incurs additional costs. Some costs are directly related to stopping and starting up again, such as, protective maintenance of vital equipment. Other costs are so-called "stand-by" costs, such as, maintaining a field office, holding equipment on the site, and keeping salaried supervisors on the payroll. There are also costs which result purely from the passage of time, such as, increases in wages and prices. Mr. Cagney, vice president of plaintiff, testified specifically as to the additional costs of delay. He estimated that costs would run about $18,000 to $20,000 per month of delay. He also stated that such expenses or losses were not included in plaintiff's claim against the City. The evidence which stands unrebutted in the record shows that no delay damages or losses were included in plaintiff's claim.

---

* ENGBCA is the Engineers' Board of Contracting Appeals.

In its decision, the lower court cited four cases as being controlling in this matter, and conclusive against plaintiff. The cases cited were *Underground Construction Co. v. Sanitary District*, 367 Ill. 360, 11 N.E. 2d 361; *Herlihy Mid-Continent Co. v. Sanitary District*, 390 Ill. 160, 60 N.E.2d 882; *Ryan Co. v. Sanitary District*, 390 Ill. 173, 60 N.E.2d 899; *Unicon Management Corp. v. City of Chicago*, 404 F.2d 627 (7th Cir. 1968). The aforementioned cases all deal with delay damages. None of the cases involves acceleration or a claim for costs of acceleration; therefore, none of the cases utilized by the trial court is precisely in point with the instant case.

In regard to the amount of plaintiff's recovery, defendant has already admitted (in its letter of February 27, 1968) that a contract modification of $146,410.10 was appropriate to cover plaintiff's costs in the "accelerated program." By defendant's own admission, therefore, the minimum recovery of plaintiff is $146,410.10. Further evidence must be adduced to determine whether or not plaintiff should be reimbursed for additional claims due to November overtime, 15 percent overhead and additional work materials.

Since payment of plaintiff's claim was withheld because of a genuine and reasonable dispute, we hold that plaintiff is not entitled to recover interest. *Watson Lumber Co. v. Guennewig*, 79 Ill.App.2d 377, 226 N.E. 2d 270.

■■ For the reasons stated above, we find that plaintiff has established its claim of acceleration and is entitled to recover costs incurred because of the acceleration effort. Accordingly, the judgment of the trial court is reversed and the cause is remanded with directions to vacate the judgment in favor of defendant and enter judgment in favor of plaintiff and to grant plaintiff a new trial on the issue of costs of acceleration only.

Judgment reversed and cause remanded with directions.

SULLIVAN, P. J., and DRUCKER, J., concur.