719 F.2d 1335
 14 Fed. R. Evid. Serv. 635
 CHICAGO COLLEGE OF OSTEOPATHIC MEDICINE, Plaintiff-Appellee,
v.
GEORGE A. FULLER COMPANY, Defendant-Appellant.
GEORGE A. FULLER COMPANY, Defendant, Counterclaimant-Appellant,
v.
Ed HOFFMAN, Counterdefendant-Appellee.
CHICAGO COLLEGE OF OSTEOPATHIC MEDICINE, Plaintiff-Appellee,
v.
GEORGE A. FULLER COMPANY, Defendant-Appellant.
GEORGE A. FULLER COMPANY, Third Party Plaintiff-Appellant,
v.
SCHMIDT, GARDEN AND ERICKSON, Third Party Defendant-Appellee.
CHICAGO COLLEGE OF OSTEOPATHIC MEDICINE, Plaintiff,
Counterdefendant-Appellant,
v.
GEORGE A. FULLER COMPANY, Defendant, Counterclaimant and
Third Party Plaintiff- Appellee,
and
AETNA CASUALTY AND SURETY COMPANY, Defendant-Appellee,
v.
SCHMIDT, GARDEN & ERICKSON, Third Party Defendant.
CHICAGO COLLEGE OF OSTEOPATHIC MEDICINE, Plaintiff,
Counterdefendant-Appellee,
v.
GEORGE A. FULLER COMPANY, Defendant, Counterclaimant and
Third Party Plaintiff- Appellant,
and
AETNA CASUALTY & SURETY COMPANY, Defendant,
v.
SCHMIDT, GARDEN & ERICKSON, Third Party Defendant-Appellee.
CHICAGO COLLEGE OF OSTEOPATHIC MEDICINE, Plaintiff, Counterdefendant,
v.
GEORGE A. FULLER COMPANY, Defendant, Counterclaimant and
Third Party Plaintiff- Appellee,
and
AETNA CASUALTY AND SURETY COMPANY, Defendant,
v.
ED HOFFMAN EXCAVATING, INC., Counterdefendant-Appellant,
and
Schmidt, Garden & Erickson, Third Party Defendant.
 Nos. 82-2176, 82-2177, 82-2259, 82-2315 and 82-2316.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 10, 1983.*
Decided Oct. 14, 1983.
As Amended on Denial of Rehearings Jan. 13, 1984.
 
 Thomas A. Foran, Foran, Wiss & Schultz, Chicago, Ill., for plaintiff-appellant, counterdefendant-appellee.
 Robert E. Kehoe, Jr., Wildman, Allen & Dixon, Chicago, Ill., for defendant-appellant.
 Sherwin D. Abrams, Solomon, Rosenfeld, Elliott, Stiefel & Abrams, Ltd., Chicago, Ill., for counterdefendant-appellant.
 John R. Doyle, McDermott, Will & Emery, Chicago, Ill., for third party defendant-appellee.
 Before BAUER and WOOD, Circuit Judges, and GIBSON, Senior Circuit Judge.**
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 This consolidated appeal of diversity jurisdiction cases consists of three major disputes arising from the construction of a New Family Outpatient Clinic (the "project"). In the original action, the plaintiff owner, Chicago College of Osteopathic Medicine ("CCOM"), sued the general contractor, George A. Fuller Company ("Fuller"), alleging breach of the construction contract by failing to carry the work forward in an expeditious manner, improperly supervising work on the project and submitting improper payment applications. By counterclaim, Fuller charged that CCOM and the project architect, Schmidt, Garden and Erickson ("SGE"), breached the construction contract by delaying the project's progress, delaying or refusing to make certain payments allegedly due Fuller, and terminating Fuller. Finally, there is the counterclaim filed by the subcontractor Ed Hoffman Excavating, Inc., ("Hoffman"), claiming damages for delay against Fuller.
 
 
 2
 I. Hoffman Litigation.
 
 
 3
 The Hoffman litigation presents two issues.[1] First, whether Hoffman was entitled to damages for delay. Second, whether CCOM or SGE must indemnify Fuller for delay damages paid to Hoffman.
 
 
 4
 A. Liability.
 
 
 5
 On October 8, 1973, Hoffman and Fuller contracted for Hoffman to perform the excavating services on the CCOM clinic project for $210,000. The printed form contract supplied by Fuller contained the following waiver of delay claims provision:
 
 ARTICLE XI
 
 6
 If the Subcontractor shall be delayed in the commencement, prosecution or completion of the Work or shall be obstructed or hindered in the orderly progress of the Work by any act, neglect of [sic] default of the Contractor, the Owner, the Architect, another contractor or subcontractor or by any cause beyond the control of the Subcontractor, then the time fixed for completion of the Work shall be extended.... The Subcontractor expressly agrees not to make, and hereby waives, any claim for damages on account of any delay, obstruction or hindrance for any cause whatsoever, including but not limited to the aforesaid causes, and agrees that its sole right and remedy in the case of any delay ... shall be an extension of the time fixed for completion of the Work.
 
 
 7
 (Emphasis added.)
 
 
 8
 At trial, Edwin Hoffman, the President and Treasurer of Hoffman, testified he discussed the meaning of Article XI with Fuller personnel--Fullington, Bronge, and Marchiori--at a meeting held in February, 1974. According to Hoffman, the Fuller personnel informed him that Article XI covered commonly encountered delays of a few days, but "did not apply to [this] particular situation" where the period of delay amounted to several months. On several occasions, Mr. Hoffman requested a release from the excavating contract, but Bronge told Hoffman to "hang on in good faith" and, in February of 1974, at a meeting with Fuller's Hessmer, Fullington and Bronge, Hoffman was promised payment for the delays and extra costs incurred.
 
 
 9
 The district court found that Hoffman had relied upon the promises made by Fuller personnel assuring extra payment and that the parties did not intend the delay provision to apply to delays purposely caused by the conduct of either the owner, the general contractor, or the architect, but to "ordinary delays anticipated by things such as weather, unavailability of supplies, and matters of that kind." Id. at 3091. The court determined that the delay clause was inapplicable because it found that SGE, Fuller, and CCOM caused the delay; the court attributed no delay to Hoffman. Although this interpretation of the delay provision yields a fair result, Illinois case law is to the contrary. Unicon Management Corp. v. City of Chicago, 404 F.2d 627 (7th Cir.1968) (Illinois law applied);[2] Herlihy Mid-Continent Co. v. Sanitary Dist., 390 Ill. 160, 60 N.E.2d 882 (1945); Underground Construction Co. v. Sanitary Dist., 367 Ill. 360, 11 N.E.2d 361 (1937) (10-months delay); M.A. Lombard & Son Co. v. Public Building Commission, 101 Ill.App.3d 514, 57 Ill.Dec. 209, 428 N.E.2d 889, 892 (1st Dist.1981); Bates & Rogers Construction Corp. v. North Shore Sanitary Dist., 92 Ill.App.3d 90, 47 Ill.Dec. 158, 414 N.E.2d 1274 (2d Dist.1981). See generally Annot., Validity and Construction of "No Damage" Clause With Respect to Delay in Building or Construction Contract, 74 A.L.R.3d 187 (1976).
 
 
 10
 In Herlihy Mid-Continent Co., the plaintiff (Herlihy) agreed to construct part of the Calumet sewage works extension for the Sanitary District of Chicago. The Sanitary District caused two years of delay and Herlihy sued for resulting damages. The contract provided: "[T]he Contractor shall not be entitled to any damages ... from the Sanitary District on account of any delay ... resulting from any of the causes aforesaid in this article [except for the following enumerated expenses]." Id. 60 N.E.2d at 884-85. The court observed that, absent a delay-waiver clause, a contractor is entitled to recover damages sustained by a delay caused by the contractee's default. Herlihy contended that the court should apply fundamental rules of construction, such as construing the contract prepared by a defendant most strongly against him, ascertaining what meaning and intent an ordinary person would attach to the language, and adopting a strained construction to prevent an injustice. The court rejected the use of rules of construction because the contract term "any act or delay" was "broad and comprehensive, ... plain and understandable, ... [and bore] no construction except that it shows an intent to include all delays caused by the district whether they be unavoidable or such that they could have been avoided by the district." Moreover, the court considered it immaterial whether the Sanitary District had an excuse which justified its act causing the delay.
 
 
 11
 Here, the language of Article XI in the Fuller/Hoffman contract plainly waives any claim for damages on account of any delay for any cause whatsoever. It is not ambiguous. Mr. Hoffman's testimony that the parties meant ordinary delay or delay of a few days cannot now be engrafted on the agreement. Nor does Illinois law presume, as did the district court, that under Illinois law deliberate delay by the contractor is not covered by such a broad waiver provision.
 
 
 12
 Alternatively, Hoffman argues that (1) Fuller waived the delay provision,[3] (2) Hoffman meets the five-prong test for obtaining payment for extra work,[4] and (3) the parties orally modified the written contract work.[5] The district court did not rule upon any of these theories of recovery. Thus, we must remand to the district court to consider the merits of these alternative grounds for recovery. We leave it up to the district court to determine whether sufficient evidence was presented in the bench trial to enable the judge to rule on these alternative theories of recovery based on the trial record, or, if insufficient evidence was presented below, to conduct a new trial. We direct that this case be remanded to the same judge, Judge Leighton, who presided over the trial below.
 
 
 13
 B. Indemnification.
 
 
 14
 Fuller argues that CCOM and SGE should indemnify it for damages resulting from the Hoffman litigation because the district court found that SGE and CCOM also caused some of the delays in Hoffman's work. Although Fuller does not contend that there is an express indemnity contract between it and SGE or CCOM, Fuller asserts there is an implied indemnity contract since it is being held liable for damages caused by the misconduct of SGE and CCOM. See generally N. Bua, Third Party Practice in Illinois: Express and Implied Indemnity, 25 DePaul L.Rev. 287, 296 (1975-76).
 
 
 15
 The district court dismissed Fuller's third-party complaint against SGE and CCOM for indemnity, ruling that the complaint failed to state a claim upon which relief could be granted. The district court relied primarily upon the Illinois Appellate Court decisions in Board of Education v. Joseph J. Duffy Co., 97 Ill.App.2d 158, 240 N.E.2d 5 (2d Dist.1968), and Talandis Construction Corp. v. Illinois Building Authority, 23 Ill.App.3d 929, 321 N.E.2d 154 (1st Dist.1974). Fuller argues, however, that Duffy and Talandis have been overruled by the recent Illinois Supreme Court case of Maxfield v. Simmons, 96 Ill.2d 81, 70 Ill.Dec. 236, 449 N.E.2d 110 (1983).
 
 
 16
 We read Maxfield[6] as applying only to instances where the principal action against the original defendant is based solely on the defect of the product and not upon any independent fault of the defendant. See generally Feirick, Third-Party Practice, 1967 U.Ill.L.F. 236, 242. The situation between Fuller, CCOM and SGE is not analogous to a products liability case and Fuller has been found to be at fault in causing the delays.
 
 
 17
 Fuller also urges upon us the recent Illinois Appellate Court decision in parallel state litigation arising from the same construction project. See Case Prestressing Corp. v. Chicago College of Osteopathic Medicine, No. 82-2887 (Ill, App. Ct. 1st Dist. Sept. 29, 1983) (petition for leave to appeal to the Illinois Supreme Court filed Dec. 15, 1983). Four subcontractors initially were involved in the federal court litigation as crossclaimants against Fuller, CCOM and SGE, seeking to foreclose their mechanic's liens. Because the federal court lacked jurisdiction over the claims due to incomplete diversity, three of the subcontractors voluntarily dismissed their federal claims; one subcontractor refiled in state court. Only Hoffman remained in federal court, securing diversity jurisdicition by dropping its claims against CCOM and SGE. In both the state and federal court suits, Fuller brought third-party actions for indemnity against CCOM and SGE.
 
 
 18
 Although the state trial court, like the federal district court, indicated that the third party claim failed to state a cause of action under Illinois law, the Illinois Appellate Court reversed and remanded the case for reinstatement of the indemnity claim. In so doing, the Illinios Appellate Court distinguished the state court litigation from the Hoffman litigation in federal court. While the federal district court had found that Fuller, CCOM and SGE all contributed to delays on the project, the Illinois Appellate Court read the federal court record to show that the only delay caused by Fuller was particular to the Hoffman situation. The court concluded that Fuller was not responsible for any delays which affected the subcontractor in the state court litigation. Case Prestressing, slip op. at 9. The court then acted upon the "modern tendency" in Illinois to try to place the ultimate liability for loss "where logic suggests such liability really belongs--usually against the more negligent party or parties." Id., slip op. at 7.
 
 
 19
 Case Prestressing does appear to conflict with the broad Duffy and Talandis language that a stranger to a contract has no liability to a third party plaintiff who is faced with an adverse judgment based on breach of contract. See Talandis, 23 Ill. App. 3d at 935; Duffy, 97 Ill. App. 2d at 162. Case Prestressing distinguishes these two cases on the grounds that, in Duffy, there was no contract between the third party plaintiff and third party defendant, and in Talandis, there was no breach of the contract between the two, while in the instant case there was a contract which CCOM, the third party defendant, breached. Case Prestressing, slip op. at 9. The state court concluded that a contracting party may be held liable for damages naturally and foreseeably arising from its breach of contract. Id., slip op. at 10. Thus, CCOM's breach of its contract with Fuller, held to be the sole cause of Fuller's breach of its contract with the subcontractor, could provide the basis for Fuller's indemnity action against CCOM.
 
 
 20
 Case Prestressing does not purport to depart from Illinois law as to indemnity actions brought by a third party plaintiff who bears independent fault in the breach of its contract with the original plaintiff; such actions apparently still would fail under the rule of Duffy and Talandis. The Case Prestresing analysis addresses only the situations where the third party defendant's breach of its contract with the third party plaintiff caused the third party plaintiff to breach its contract with the original plaintiff. This is consistent with our reading of Maxfield in that the third party defendant is liable only where there is no independent fault of the original defendant.
 
 
 21
 As we interpret these cases, we hold that Illinois law as it now stands does allow a third party action for indemnity where the third party plaintiff and the third party defendant were contracting parties and the third party plaintiff bears no independent fault in the harm to the original plaintiff. In the instant case, the district court judge was convinced that Fuller was at fault in causing the delays. Therefore, Fuller does not come within the Case Prestressing rule but rather falls within the broad rule of Duffy and Talandis. An indemnity action is not available to Fuller in the event that Fuller is found laible to Hoffman upon remand.
 
 
 22
 II. Fuller's Appeal.
 
 
 23
 A. Fuller's Breach of Contract Claims Against CCOM.
 
 
 24
 Fuller assigns error to the jury instructions on the contract conditions precedent in Fuller's counterclaim against CCOM. Fuller's counterclaim alleged that CCOM had breached the construction contract. To recover, Fuller first had to prove that it had fulfilled its own contractual obligations. The court instructed the jurors that one of Fuller's contractual duties was to submit a list of proposed subcontractors to the architect within 45 days of the awarding of the construction contract. Fuller contends that this instruction was error because CCOM waived compliance with this obligation and it was immaterial. Fuller argues that the court either should have held the 45-day notice provision immaterial and waived as a matter of law, or instructed the jury concerning waiver of contract terms. In opposition, CCOM states that the instruction was unnecessary because Fuller failed to adduce sufficient evidence of waiver (in particular, that CCOM knowingly relinquished a right under the contract between the parties).[7]
 
 
 25
 Fuller tendered the following instruction on waiver, which the district court refused as argumentative, unnecessary, and confusing.
 
 
 26
 Any party to a contract may waive any terms, conditions or other rights that it might have under the contract. Waiver may be accomplished by agreement of the parties or it may be inferred from acts or conduct, but to constitute a waiver there must be an intentional relinquishment of a known right.In considering whether either any contract obligations were not fulfilled by either Chicago College of Osteopathic Medicine or George A. Fuller Company, you may also consider whether any of the terms, conditions or other rights under the contract were waived by the other party.
 
 
 27
 We do not consider this instruction to be either argumentative, unduly confusing, or unnecessary.
 
 
 28
 To establish a waiver of performance of the terms of a contract, Illinois law requires that the facts and circumstances show "an intentional relinquishment of a known right," and "must be inconsistent with an intention to insist on the rights of the party under the contract." John Kubinski & Sons, Inc. v. Dockside Development Corp., 33 Ill.App.3d 1015, 1019-20, 339 N.E.2d 529, 533 (1st Dist.1975). A party to the contract may waive a condition precedent to performance on his part or a breach of the contract provisions by conduct manifesting a continued recognition of the contract's existence after learning of the breach thereof, such as "by continuing to accept performance of the contract and to have the benefit thereof." I.L.P. Contracts Sec. 409 (1955); accord Royal Ornamental Iron, Inc. v. Devon Bank, 32 Ill.App.3d 101, 336 N.E.2d 105 (1st Dist.1975). Additionally, when a party lists "specific objections to the sufficiency of performance," generally, Illinois courts hold that he has waived any other objections he has. I.L.P. Contracts Sec. 409 (1955); see generally John J. Calnan Co. v. Talsma Builders, Inc., 67 Ill.2d 213, 10 Ill.Dec. 242, 246, 367 N.E.2d 695, 699 (1977).
 
 
 29
 In the present case, CCOM proceeded with the contract for almost two years after Fuller had failed to timely list the names of the subcontractors. Additionally, when CCOM terminated Fuller by written notice, CCOM did not list the 45-day notice requirement as a default. CCOM states that these facts fail to establish waiver because Fuller offered no evidence that CCOM knew of Fuller's failure of performance.
 
 
 30
 Although Fuller points to nothing in the record which establishes that CCOM actually knew of the breach, the evidence does support a finding that SGE was aware of the breach and, as CCOM's agent, either had authority to waive the breach or a duty to inform CCOM of it. At oral argument, counsel for CCOM conceded awareness of all subcontractors within 45 days except for the caisson contractor. All caissons were installed by May 3, 1974.
 
 
 31
 Conceivably, SGE realized upon receipt of the list of subcontractors on the 45th day that the caisson subcontractor was missing, or SGE, during the course of its supervision of the construction,[8] learned that Fuller had not listed the caisson subcontractor. Further, the jurors could have concluded that this is the type of information which SGE has a duty to communicate to CCOM, and therefore, that CCOM was aware of the breach; or that SGE had the authority to waive the 45-day notice provision as CCOM's agent, and therefore, that CCOM should be held to have waived the requirement. See generally Neuberg v. Clute, 6 Ill.2d 58, 126 N.E.2d 648 (1955); W. Seavey, Agency Secs. 96-98 (1964); I.L.P. Contracts Secs. 127, 221 (1953).
 
 
 32
 Fuller thus adduced sufficient evidence of waiver to support a jury finding, and the district court's failure to give an instruction on waiver was error. We may reverse the jury verdict for CCOM, however, only if omission of the waiver instruction was not harmless error. On appeal, "[e]rror is not to be presumed but must be made affirmatively to appear by the party asserting it ... every intendment must be indulged in favor of the validity of the judgment appealed from. "McGrath v. Zenith Radio Corp., 651 F.2d 458, 472 (7th Cir. 1981) (quoting Wabash Railway Co. v. Bridal, 94 F.2d 117, 121 (8th Cir), cert. denied, 305 U.S. 602 (1938)). Reversal due to error in instructions is appropriate only where "the jury's understanding of the issues was seriously affected, to the prejudice of the plaintiff[]." Wilk v. American Medical Association, 719 F.2d 207, 218-19 (7th Cir. 1983). Error embodied in a jury instruction is grounds for reversal unless it affirmatively appears, viewing the charge as a whole, that the error was harmless. Schybinger v. Interlake Steamship Co., 273 F.2d 307, 313 (7th Cir. 1959).
 
 
 33
 Failure to instruct the jury on waiver would have had prejudiced Fuller only if the jury found that Fuller had performed every contractual obligation except submission of the proposed subcontractor's list. The jury then would have had to find that the nonperformance of this duty alone was a material breach of Fuller's contractual obligations and thus Fuller could not recover on its counterclaim against CCOM.
 
 
 34
 Judge Leighton viewed submission to the jury of this and seven other of Fuller's contractual obligations as merely informing the jury "what the contract between the parties provided with regard to Fuller's obligations," not as a statement on materiality. Tr. 2606-07. Concerning Fuller's counterclaim against CCOM, Judge Leighton instructed the jury that Fuller must show only that CCOM failed to meet one or more of its contractual obligations, that Fuller suffered losses, and that those losses were caused by CCOM's breach. Tr. 2789-90. No instruction told the jury that Fuller must have fully performed its own contractual obligations before it could recover on its counterclaim. However, the jury was told to consider the instructions on the several claims involved in this trial as a whole, and the instructions on CCOM's claims against Fuller informed the jury that the prerequisites to CCOM's recovery included proof by a preponderance of the evidence that CCOM "substantially performed each of its obligations under the construction contract," and that Fuller "materially and substantially breached one or more of its obligations under the construction contract." Tr. 2782. The jury thus was adequately informed that any breach by Fuller must be material before it could bar Fuller's counterclaim.
 
 
 35
 We find that Judge Leighton's instructions as a whole would have prevented a reasonable jury from finding that Fuller's only shortcoming under the contract was a material breach of the contract barring it from recovery on its counterclaim. Failure to give the waiver instruction was harmless error.
 
 
 36
 B. Fuller's Breach of Contract Claim Against SGE.
 
 
 37
 Despite Fuller's contention that the district court erred in refusing to instruct the jury on its claim that SGE breached duties owed to Fuller arising ex contractu, we affirm the district court refusal because SGE owed no contractual obligations to Fuller.
 
 
 38
 Fuller recognizes that it and SGE did not enter into any written contract. Rather, Fuller claims a breach of contract by SGE based upon the written agreement between Fuller and CCOM. According to Fuller's theory, SGE was CCOM's agent during the construction phase and that, as such agent, SGE agreed to be bound by the terms of the contract between Fuller and CCOM, a contract to which SGE was not a party. As support for this theory, Fuller points out that the Fuller/CCOM contract "expressly refers to activities to be performed by the architect personally" and that the SGE partner in charge of the project, Lawrence Harrison, testified that he considered himself "bound by the provisions in that contract ...." Tr. 825.
 
 
 39
 Fuller also recognizes that "a disclosed agent is usually not contractually obligated to the other party," but states that "an agent is personally bound if he agrees to be or if, by reasonable inference, his personal agreement can be implied in the contract." While the proposition is correct, Fuller's conclusion that SGE agreed to be bound is incorrect.[9]
 
 
 40
 In Gateway Erectors Division v. Lutheran General Hospital, 102 Ill.App.3d 300, 58 Ill.Dec. 78, 430 N.E.2d 20 (1st Dist.1981), the cement contractor alleged that the construction manager owed contractual duties to the cement contractor based upon the contract between the cement contractor and the owner. That contract, to which the construction manager was not a party, expressly referred to many tasks which the manager was to carry out. The court affirmed the dismissal of the contract claim, concluding that the manager was the agent of a disclosed principal and did not agree, either expressly or inferentially, to become personally liable under the contract.
 
 
 41
 Here, Fuller was not a party to the CCOM/SGE contract and SGE was not a party to the CCOM/Fuller contract. SGE never expressly agreed to be bound by the CCOM/Fuller agreement. The district court properly refused to give Fuller's tendered jury instructions on its contract claim against SGE.
 
 
 42
 C. Fuller's Negligence Claim Against SGE.
 
 
 43
 The district court gave the following jury instruction on the standard of care owed by architects:
 
 
 44
 In performing its duties, an architect must possess and apply the knowledge and use the skill and care that is ordinarily used by reasonably well-qualified architects in the locality in which he practices or in similar localities in similar cases and circumstances. A failure to do so is a form of negligence that is called malpractice.
 
 
 45
 The only way in which you may decide whether Schmidt, Garden & Erickson possessed and applied the knowledge and used the skill and care which the law required of it is from evidence presented in this trial by architects called as expert witnesses. You must not attempt to determine this question from any personal knowledge you have.
 
 
 46
 This instruction was modeled after the medical malpractice jury instruction set forth in Illinois Pattern Jury Instructions, Civil Sec. 105.01 (2d ed. 1971).
 
 
 47
 Fuller contends that the district court erred in giving the malpractice jury instruction with respect to Fuller's negligence claim against SGE, and in refusing to give its proffered instruction which imposed on SGE a lesser duty, i.e., to use only ordinary care,[10] particularly with respect to SGE's role of supervising the construction. Additionally, Fuller argues that regardless of the standard of care required, the district court erred in instructing the jurors that SGE's negligence could be established only by way of expert testimony, because the jurors could evaluate SGE's conduct based on common knowledge.
 
 
 48
 We conclude that the district court properly held SGE to the standard of care ordinarily demanded of architects, both in the performance of its supervisory duties and the preparation of plans. Miller v. De Witt, 59 Ill.App.2d 38, 89-92, 111-12, 208 N.E.2d 249, 273-75, 284 (4th Dist.1965), aff'd in pertinent part and rev'd in part on other grounds, 37 Ill.2d 273, 226 N.E.2d 630 (1967).[11] Other courts also have applied the professional standard of care to supervisory and administrative activities as well as to the preparation of plans and designs. See, e.g., Peerless Insurance Co. v. Cerny & Associates, Inc., 199 F.Supp. 951, 955 (D.Minn.1961); Nauman v. Harold K. Beecher & Associates, 24 Utah 2d 172, 467 P.2d 610, 615 (1970); 530 East 89 Corp. v. Unger, 43 N.Y.2d 776, 402 N.Y.S.2d 382, 373 N.E.2d 276, 277 (1977); Evans v. Howard R. Green Co., 231 N.W.2d 907, 913 (Iowa 1975).[12]
 
 
 49
 We also find that the district court correctly instructed the jury regarding the necessity of expert-witness testimony to prove a breach of an architect's standard of professional conduct. The standard of care ordinarily expected of architects in executing their obligations is generally not a "matter of common knowledge,"[13] although a particular case may only call upon the common sense of laymen or involve gross negligence obvious to lay observation. See generally Walski v. Tiesenga, 72 Ill.2d 249, 256, 21 Ill.Dec. 201, 207, 381 N.E.2d 279, 285 (1978); Annot., Necessity of Expert Testimony to Show Malpractice of Architect, 3 A.L.R. 4th 1023 (1981).
 
 
 50
 Fuller charges that SGE acted negligently in authorizing extra compensation for changes in the structural steel design, in approving certain charges for extra services and in assuring payment for delay claims. Analogous claims of malpractice occurred in Peerless Insurance Co. v. Cerny & Associates, Inc., 199 F.Supp. 951, 953 (D.Minn.1961), and 530 East 89 Corp., 43 N.Y.2d 776, 402 N.Y.S.2d 382, 383, 373 N.E.2d 276, 277 (1977). In Peerless Insurance Co., the court considered expert-witness testimony in finding the defendant architect negligent in approving and certifying payments. The architect in 530 East 89 Corp. allegedly delayed inordinately long in responding to objections made by the city's department of buildings and procrastinated in remedying the problems; the court ruled that such allegations of architectural malpractice were "not within the competence of an untutored layman to evaluate." 402 N.Y.S.2d at 383, 373 N.E.2d at 277.
 
 
 51
 Here, too, the acts of which Fuller complains are not within the realm of jurors' common experience and observation. To properly assess SGE's actions, the jury needed a witness with an expertise in the field of architecture to explain the nature of the judgment calls SGE made and the accuracy to be expected.
 
 
 52
 III. CCOM's Claims.
 
 
 53
 A. Directed Verdict on Count II.
 
 
 54
 CCOM asserts that the district court erred in directing a verdict for Fuller on Count II, claiming the evidence at trial established a prima facie case of fraud.[14] Count II, alleges that Fuller devised a scheme to defraud CCOM of substantial sums of money by intentionally underbidding the project to assure obtaining the contract, and then extracting money in excess of the contract amount by demanding payment for unwarranted delay claims, overcharging for extra work, and encouraging its subcontractors to make delay claims even though unfounded.
 
 
 55
 According to Illinois law, "verdicts ought to be directed ... only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." Pedrick v. Peoria & Eastern Railroad Co., 37 Ill.2d 494, 510, 229 N.E.2d 504, 513-14 (1967).
 
 
 56
 The essential elements of fraud[15] which the plaintiff must affirmatively establish are: (1) the representation must be a statement of a material fact, rather than a mere promise or opinion; (2) the representation must be false; (3) the person making the statement must know or believe that the representation is false; (4) the person to whom the representation is made must reasonably rely on the truth of the statement; (5) the statement must have been made for the purpose of causing the other party to affirmatively act; and (6) the reliance by the person to whom the statement was made led to his injury. Merit Insurance Co. v. Colao, 603 F.2d 654, 658 (7th Cir.1979), cert. denied, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); Roda v. Berko, 401 Ill. 335, 339-40, 81 N.E.2d 912, 914 (1948); Bissett v. Gooch, 87 Ill.App.3d 1132, 1139, 42 Ill.Dec. 900, 904, 409 N.E.2d 515, 519 (2d Dist.1980).
 
 
 57
 The only evidence concerning Fuller's bid figure came from the deposition testimony of Robert Fullington, a Fuller estimator who had compiled numbers for submission to his superior, John Hessmer, for determination of a bid price. Fullington estimated the cost to be $10,273,536 (not including profit). After Fullington gave the estimate to Hessmer, Hessmer reduced the estimate without consulting Fullington and bid the project for $9,991,100 (which included a $200,000 profit). This bid proved to be about $500,000 below the next lowest bid. According to Fullington, Hessmer sometimes obtained cost figures different from those he originally submitted causing the total cost figure to increase or decrease. On the occasions that the bid price was less than the total cost figure which Fullington obtained, Fullington said that it was not his understanding that Fuller's bid was below its projected total cost.
 
 
 58
 Although Fuller's bid price was lower than Fullington's preliminary estimate, this alone is insufficient evidence to support a finding of the element of knowledge or belief of falsity.[16] Hessmer did not testify. Fullington gave a reasonable explanation of Hessmer's action in reducing the bid and, since his testimony was by way of deposition, the jury could not observe anything further from his demeanor. Despite evidence suggesting that Fuller knew some of the delay claims were unfounded, this does not sufficiently create an inference that Fuller intentionally underbid the contract and then sought to somehow make a profit on the project. Rather, most of the million dollars in delay claims were for the benefit of Fuller's subcontractors. Furthermore, even if the delay claims were material misrepresentations, CCOM points not to evidence showing it relied upon such claims but instead to evidence indicating it steadfastly refused to pay such demands. Finally, with regard to the June 25, 1975 compromise agreement, while this court perceives sufficient evidence in the record to establish fraud (save for injury to CCOM),[17] it is not the fraudulent scheme alleged in Count II. The result of this compromise is not even alleged in Count II as one of the particular circumstances of the fraud. See generally Fed.R.Civ.P. 9(b). We, therefore, affirm the order directing the verdict on Count II.
 
 
 59
 B. Directed Verdict on Count III.
 
 
 60
 CCOM next argues that the district court erred in directing a verdict for Fuller on Count III of the complaint.[18] CCOM alleges in Count III that Fuller told CCOM it paid unlawful bribes to employees of the Building Department of the City of Chicago, that Fuller demanded reimbursement from CCOM, and that Fuller delayed construction attempting to coerce reimbursement when CCOM refused to pay. According to CCOM, these acts establish that Fuller is liable in tort for breaching its duty to act in good faith.[19] In response, Fuller contends that Illinois law does not recognize CCOM's legal theory. We agree with Fuller and affirm the district court because no Illinois case or statute supports a cause of action for bad-faith dealing outside the areas of insurance and employment law.[20]
 
 
 61
 C. New Trial.
 
 
 62
 CCOM asserts that the trial court erred in denying CCOM's motion for a new trial. According to CCOM, four errors compel the granting of a new trial, either individually or cumulatively. These alleged errors are: (1) the erroneous admission of Fuller's exhibit 68; (2) incorrect jury instructions; (3) undue limitations on closing argument; and (4) the jury verdict is against the manifest weight of the evidence as to Counts I and IV.
 
 
 63
 1. Jury Instructions.
 
 
 64
 CCOM points to four aspects of the jury instructions which it considers incorrect. First, CCOM contends that the district court misstated CCOM's contractual duties in an issue instruction which required CCOM to prove it had substantially performed its contractual obligations for it to prevail on its claim for breach of contract. CCOM asserts that the court included four obligations which in fact were not contractual duties owed to Fuller. Second, CCOM contends that the instruction included terms which were vague, argumentative, and calculated to mislead the jury. Third, CCOM argues that the district court erred in refusing to give CCOM's tendered Instruction 41 and omitting to read Instruction 39. Fourth, CCOM assigns error to the instruction informing the jury that Aetna Casualty and Surety Company ("Aetna") was entitled, as a matter of law, to all defenses available to Fuller even though Aetna never raised these defenses in its pleadings.
 
 
 65
 CCOM waived its objection that the issue instruction contained non-contractual duties. Pursuant to Fed.R.Civ.P. 51, "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." At trial, CCOM objected only to the alleged argumentative style and complexity of the instruction.[21] The objection did not inform the court that CCOM objected to the inclusion of four particular obligations or precisely which four CCOM considered objectionable.[22] Therefore, CCOM waived this objection.
 
 
 66
 Similarly, we conclude that CCOM waived any objection with respect to the vagueness or misleading language, if any, contained in the instruction. Although CCOM renews its objection that the instruction was argumentative, CCOM does nothing to embellish this assertion in its brief by way of explanation and this court does not consider the instruction to be unduly argumentative.[23]
 
 
 67
 CCOM next contends that the district court erred in refusing to give CCOM's Instruction 41 and in failing to give CCOM's Instruction 39, both addressing the scope of SGE's role as CCOM's representative. CCOM Instruction 39, relating to SGE's roles as an independent contractor and as CCOM's representative agent, defined the terms agent and independent contractor, and further provided:
 
 
 68
 One who engages an independent contractor is not liable to others for the negligence of the independent contractor. A principal is liable to third persons for the negligence of his agent in the transaction of the business of the principal, if the agent himself is liable.
 
 
 69
 The court agreed this instruction should be given but omitted giving it. CCOM did not object to this omission or raise this matter in its motion for a new trial.[24]
 
 CCOM Instruction 41 provided:
 
 70
 [SGE] as architect on the clinic project, acted as an independent contractor in preparing the plans and specifications for the building and acted as the representative of the College only during actual construction of the clinic and until the termination of Fuller. The architect as representative of the College pursuant to the contract among the parties could only authorize an addition to the contract amount provided the architect had written authority from the College to do so.
 
 
 71
 The court rejected this instruction as argumentative because it argues CCOM's contention that SGE acted as CCOM's representative or agent only during the actual construction of the clinic. The court told the parties that they could modify and resubmit the instruction.[25]
 
 
 72
 CCOM contends that the court's refusal to give Instruction 41 and failure to give Instruction 39 substantially prejudiced CCOM by allowing the jury to believe CCOM was liable for any defects in SGE's plans and specifications when, in fact, SGE acted as an independent contractor.[26]
 
 
 73
 Although we agree that the district court should have given Instruction 39, CCOM failed to object to this omission and therefore waived this error. With respect to Instruction 41, the court committed no reversible error in refusing it because no substantial right of CCOM was thereby affected. Fed.R.Civ.P. 61. Despite CCOM's professed fear that the jury would consider CCOM liable for SGE's purported negligence in preparing the plans, we note that Fuller lost on its negligence suit against SGE. Thus, even if the jury believed CCOM was liable for any negligence of SGE's, the jury found no actionable negligence. Furthermore, CCOM does not outline any meaningful difference--in the circumstances of this case where the plaintiff is the contractor--between the scope of liability presented by a tort claim of negligent preparation of plans and specifications, and a contractual breach of supplying defective plans. Contrary to CCOM's assertions, Illinois law recognizes that the building owner impliedly warrants to the contractor that the plans and specifications provided by the owner are free from defects which would cause the contractor to incur additional, unanticipated costs. W.H. Lyman Construction Co. v. Village of Gurnee, 84 Ill.App.3d 28, 36-37, 38 Ill.Dec. 721, 403 N.E.2d 1325 (2d Dist.1980); Bulley & Andrews, Inc. v. Symons Corp., 25 Ill.App.3d 696, 704-05, 323 N.E.2d 806 (1975); see also Williston on Contracts Sec. 1966 at 189 (3d ed. 1978). Thus, even if the jury considered SGE to be CCOM's agent for purposes of preparing the plans and specifications, the error was harmless both because the jurors found SGE not to have been negligent in its preparation and because the negligence grounds did not expose CCOM to greater accountability than did the contract grounds.
 
 
 74
 CCOM's fourth argument also fails. None of its rights were affected when the district court instructed the jury that Aetna was entitled, as a matter of law, to all defenses available to Fuller in determining whether Aetna had breached any duty owed to CCOM under the performance bond. According to CCOM, this instruction improperly permitted Aetna to rely on Fuller's affirmative defenses which Aetna never raised in its pleadings. CCOM states that even if a surety is entitled to rely on the defenses of its principal, the surety must nonetheless plead those defenses.
 
 
 75
 In response, Fuller points out that none of its affirmative defenses were presented to the jury; rather, only those defenses framed by the instructions on CCOM's contract claim against Fuller were presented to the jury. Fuller then correctly notes that Aetna has no liability on its bond unless Fuller is in fact in default of its contract obligations and CCOM in fact performed its obligations.
 
 
 76
 As a practical matter, CCOM does not indicate how this lack of pleading prejudiced it. By virtue of Fuller's answer and assertion of defenses, CCOM was not surprised at trial or unprepared to meet the defenses of Aetna. Error not affecting the substantial rights of the parties must be disregarded. Fed.R.Civ.P. 61.
 
 
 77
 2. Exhibit 68.
 
 
 78
 CCOM urges that the district court erred in denying its motion for a new trial based upon the court's error in admitting Fuller exhibit 68, a 77-page document dated June 10, 1975, which CCOM prepared in connection with its bond issue. We disagree.
 
 
 79
 At trial, CCOM objected that the document was not offered through a witness, it was prepared before June 10, 1975, and, contrary to Fuller's argument, CCOM did not make an implied admission in the document to the effect that CCOM found no fault with Fuller's work. In response, Fuller argued that the document was relevant because (1) it showed CCOM's motivation for "handling itself like it did," (2) the document does not discuss any problems with Fuller, although CCOM now claims there were numerous problems with Fuller, (3) Fuller's expert witness had considered the document in rendering his opinion on certain elements of damages to which he testified, and (4) the projection by the accountants in the document concerning what the clinic would earn when in operation proved inconsistent with other testimony in the case. At the end of this argument, the court ruled:
 
 
 80
 It has been executed by Dr. Kawalik, president of the plaintiff, and it's an assertion, public assertion made by the plaintiff concerning the subject matter at issue in this case. Namely, its relationship with Fuller and the point that's made is ... that in 1975 up to June or July or May, when it was printed but prior thereto, I think it's relevant. It's admissible, certainly.
 
 
 81
 It's a statement made by the plaintiff. It can be admitted. I don't think it's necessary to ask a plaintiff whether he made a statement when there's evidence that he made it.
 
 
 82
 At trial, in Fuller's opening argument to the jurors, counsel argued that exhibit 68 made no reference to problems caused by Fuller because SGE and CCOM, not Fuller, were to blame.[27] CCOM made no objection to such argument. Rather, CCOM met this argument in its closing argument to the jurors.[28]
 
 
 83
 We agree with CCOM that, properly, a witness should have been called to establish a sufficient foundation for deeming CCOM to have made an admission by silence in this document. It is unclear whether CCOM had a duty to provide such information in this document; whether the customary practice, if not the duty, is to provide such information; or whether CCOM considered providing such information, but decided not to for the reason which Fuller imputes. In light of these ambiguities, a witness should have been called to testify as to such matters. See, e.g., Zenith Radio Corp. v. Matsushita Electric Industrial Co., 505 F.Supp. 1190, 1242 (E.D.Pa.1980). We conclude, however, that CCOM waived its objection by failing to object during opening argument, electing instead to address the issue in its closing argument.[29]
 
 
 84
 The district court's ruling that the document was admissible indicated only that the court found the document relevant because it was a statement by CCOM concerning the subject matter of the case. The court did not specifically address CCOM's argument that the document did not embody an admission by silence. Moreover, CCOM's original objection that the document was not introduced through a witness was not sufficiently clear to apprise the court of the nature of its objection; rather, the court apparently understood this objection to go to authenticity rather than foundation as the court stated it was unnecessary to "ask a plaintiff whether he made a statement when there's evidence that he made it." Thus, in light of the lack of specificity of the objection and the absence of a clear ruling on CCOM's objection, CCOM was obliged to repeat, and with greater specificity, its objection during Fuller's argument. See generally M. Graham, Handbook of Federal Evidence Sec. 103.2 at 14 (1981). As to the date the document was prepared, this goes to the weight of the evidence rather than its admissibility and, furthermore, CCOM pointed this fact out to the jurors in its closing argument. Finally, as the document was admissible on other grounds and because CCOM's counsel aptly met the admission by silence argument, we perceive no substantial prejudice to CCOM, particularly as the jury was aware that the argument of counsel is merely that and is not to be accorded the deference given to the court's instructions. Fed.R.Evid. 103.
 
 
 85
 3. Unavailable Witness.
 
 
 86
 CCOM asserts that a new trial should be granted because the trial court erred in prohibiting CCOM's counsel from arguing to the jurors that they should infer from Fuller's failure to call Hessmer that his testimony would have been unfavorable to Fuller.[30] Questions as to the propriety of comment by counsel in argument upon the failure to produce a witness rest largely in the discretion of the trial court,[31] but the court should not preclude such argument when the case presents a significant question on this point, United States v. Mahone, 537 F.2d 922, 928 (7th Cir.), cert. denied, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). Unless sufficiently prejudicial, the exclusion of permissible comment will not warrant the granting of a new trial. Mahone, 537 F.2d at 928.
 
 
 87
 According to the "missing witness" rule, when "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction," but chooses not to call them, an inference arises "that the testimony, if produced, would be unfavorable." Id. at 926 (quoting Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893)). Thus, before a party can properly argue to the jury the possibility of drawing such an inference from the absence of a witness, the party must establish that the missing witness was peculiarly within the adversary's power to produce by showing either that the witness is physically available only to the opponent or that the witness has the type of relationship with the opposing party that pragmatically renders his testimony unavailable to the opposing party.
 
 
 88
 CCOM contends that, as Hessmer was a former employee of Fuller, Hessmer was not equally available to CCOM despite the fact that Hessmer was subject to subpoena and CCOM listed Hessmer as one of its anticipated witnesses. An employee-employer relationship is such that " 'where an employee who could give important testimony relative to issues in litigation is not present and his absence is unaccounted for by his employer, who is a party to the action, the presumption arises that the testimony of such employee would be unfavorable to his employer.' " Zuber v. Northern Pacific Railway Co., 246 Minn. 157, 74 N.W.2d 641, 649 (1956) (quoting Ellerman v. Skelly Oil Co., 227 Minn. 65, 70, 34 N.W.2d 251, 254 (1948)), see also Annot., In Argument of Civil Case, on Adversary's Failure to Call Employee as Witness, 68 A.L.R.2d 1072 (1959). Some courts qualify this rule in various ways. In Erie Railroad Co. v. Kane, 118 F. 223, 238-39 (6th Cir.1902), the Sixth Circuit ruled that it was error to instruct the jury that an inference unfavorable to a party to a civil suit might be drawn from his failure to place on the witness stand an employee who was present in court in obedience to a subpoena issued by the opposing party. The Supreme Court of Errors of Connecticut, in Secondino v. New Haven Gas Co., 147 Conn. 672, 674, 165 A.2d 598, 600 (1960), indicated that no such inference should be drawn against the defendant until, in addition to meeting other requirements of the test, "the plaintiff has made out a prima facie case." Finally, in Zuber, 74 N.W.2d at 649, the Minnesota Supreme Court held that no unfavorable inference could be drawn "where the witness is no longer in the employ of the party to the litigation."[32]
 
 
 89
 Here, Hessmer was physically available to both parties. His relationship with Fuller was very tenuous and perhaps unfriendly as Hessmer was asked to resign from the company for alleged misdeeds. Furthermore, at least with respect to Count II, CCOM failed to establish a prima facie case. Arguably, Fuller decided to avoid any possibility of unleashing potentially vicious testimony from a disgruntled former employee.[33] Furthermore, CCOM had led Fuller to believe it would call Hessmer as a witness. Perhaps the best solution would have been to permit both Fuller and CCOM to argue the matter to the jury, however, given the facts here, any error was not prejudicial.
 
 
 90
 4. Manifest Weight of the Evidence.
 
 
 91
 CCOM claims that the jury verdict on Counts I and IV are against the manifest weight of the evidence. In Zuckerman v. Berg Manufacturing and Sales Co., 279 F.2d 904, 905 (7th Cir.1960), this court held that a new trial should be granted if the verdict is "wholly unwarranted and contrary to the clear preponderance or manifest weight of the evidence." On appeal, the prevailing party "is entitled to the benefit of all the facts which the evidence tends to prove and all just inference which can be drawn therefrom."
 
 
 92
 As to Count I, there is sufficient evidence that CCOM breached its duty to provide necessary information about the job site, and to make timely and appropriate payments to present a question of fact for the jury. With respect to Count IV, even assuming that Aetna failed to properly investigate the dispute between Fuller and CCOM, such failure did not proximately cause the injury to CCOM as the jury found Fuller not liable to CCOM and therefore Aetna cannot be liable to CCOM. CCOM is not entitled to a new trial on this ground, or any other. The judgment against CCOM on its claim against Fuller is affirmed.
 
 
 93
 IV. Conclusion.
 
 
 94
 The judgment in favor of Hoffman is vacated and remanded for further consideration. The judgment entered against Fuller on its breach of contract claim against CCOM is affirmed. We affirm the judgments against Fuller on its breach of contract claim and negligence claim against SGE. The directed verdicts against CCOM on Counts II and III, and the denial of CCOM's motion for a new trial are affirmed.
 
 
 
 *
 The appeals in Case Nos. 82-2176, 82-2177, 82-2259, 82-2315, and 82-2316 were consolidated with the appeal in Case No. 80-1554. Oral argument was heard the same day by the same panel in the consolidated appeals, but argument in Case No. 80-1554 was heard separately from the argument in Case Nos. 82-2176, 82-2177, 82-2259, 82-2315, and 82-2316. For purposes of simplification, separate opinions are being issued the same day for Case No. 80-1554, and for Case Nos. 82-2176, 82-2177, 82-2259, 82-2315, and 82-2316
 
 
 **
 The Honorable Floyd R. Gibson, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation
 
 
 [1]
 The parties also raise numerous issues pertaining to the manner in which the trial court assessed damages. Because of our ruling on the question of liability, we need not reach these issues
 
 
 [2]
 In Unicon Management Corp., the complaint alleged that the City's arbitrary and unjustified failure to approve certain work resulted in 14 months of delay, causing Unicon to incur $525,000 in additional expenses in the performance of its contract. The contract contained a delay clause providing: "[T]he Contractor shall not be entitled to any damages or compensation from the City, or be reimbursed for any losses, on account of any delay or delays resulting from any of the causes aforesaid." 404 F.2d at 628-29. We held that the language of the clause stating that the contractor shall not receive "any damages" for "any delay" meant precisely that. The only exception to the explicit language which might be allowed is a situation involving bad faith delay. Id. at 630. See also M.A. Lombard & Son Co. v. Public Building Commission, 101 Ill.App.3d 514, 57 Ill.Dec. 209, 212, 428 N.E.2d 889, 892 (1st Dist. 1981) (indicated that proof of misrepresentation or fraud would negate a waiver of damages for delay provision)
 
 
 [3]
 Article XXXIV of the contract states that "provisions of this Contract [cannot] be waived except by an express waiver in writing." App. 318. Writing requirements can, however, be waived. Delta Construction, Inc. v. Dressler, 64 Ill.App.3d 867, 874, 21 Ill.Dec. 576, 582, 381 N.E.2d 1023, 1029 (3d Dist.1978)
 
 
 [4]
 See Delta Construction, Inc. v. Dressler, 64 Ill.App.3d 867, 874, 21 Ill.Dec. 576, 582, 381 N.E.2d 1023, 1029 (3d Dist.1978); Mayer Paving & Asphalt Co. v. C.A. Morse, Inc., 48 Ill.App.3d 73, 8 Ill.Dec. 122, 365 N.E.2d 360 (1977); Bulley & Andrews, Inc. v. Symons Corp., 25 Ill.App.3d 696, 323 N.E.2d 806 (1st Dist.1975)
 
 
 [5]
 Article XXXIV of the contract limits the means of modifying the contract. App. 318. But see Dressler, 64 Ill.App.3d at 874, 21 Ill.Dec. at 582, 381 N.E.2d at 1029
 
 
 [6]
 In Maxfield, the plaintiff sued the defendant Simmons, contending that a house Simmons built for him failed to meet the contract specification because the roof was buckled, bent and dipped. Simmons, in turn, filed a third-party complaint which alleged that if he were liable to Maxfield, it would be because the trusses which DeNeal supplied and Holt manufactured were defective, and therefore the third-party defendants must indemnify him. The Illinois Appellate Court applied the rule announced in Duffy and Talandis, and dismissed the third-party complaint. The Illinois Supreme Court reversed, finding the situation analogous to a products liability case in which the assembler of the completed product is entitled indemnity from the manufacturer of a defective component part. 96 Ill.2d at 86, 70 Ill.Dec. at 238, 449 N.E.2d at 112. The court reasoned that if Simmons was liable to Maxfield, it would not be because Simmons breached the contract but due to DeNeal's and Holt's tortious conduct. Thus, perceiving no rational distinction between the situation in Maxfield and a products liability action, the Illinois Supreme Court ruled that the complaint stated a cause of action
 
 
 [7]
 We agree with CCOM that the district court instructions adequately covered materiality of breach
 
 
 [8]
 An on-site inspection by SGE or an examination of Fuller's daily log book, SGE Ex. 1 (March 1974 entries), would have apprised SGE of the caisson subcontractor Case International. Additionally, Fuller's February 21, 1974 application for payment indicates certain subcontracts yet to be awarded and the April 17, 1974 application lists Case International as the caisson subcontractor. Fuller Ex. 59
 
 
 [9]
 Fuller relies on the cases Western Casualty and Surety Co. v. Bauman Insurance Agency, Inc., 81 Ill.App.3d 485, 36 Ill.Dec. 773, 401 N.E.2d 614 (2d Dist.1980), and Thilman & Co. v. Esposito, 87 Ill.App.3d 289, 42 Ill.Dec. 305, 408 N.E.2d 1014 (1st Dist.1980). Both cases, however, are readily distinguishable
 In Western Casualty and Surety Co., the Illinois Appellate Court held that the president of an insurance company was personally bound by an indemnity agreement which secured the plaintiffs from loss in the event of a breach of their agency agreement with the insurance company. Unlike SGE, however, the president actually signed the indemnity agreement (as "Robert H. Bauman Insurance Agency, Inc."). 36 Ill.Dec. at 774, 401 N.E.2d at 615. Moreover, as the court noted, the indemnity agreement would serve no purpose if Bauman Insurance was considered the indemnitor of its own obligation to perform its agency agreement. Id. 36 Ill.Dec. at 775, 401 N.E.2d at 616. The plaintiff was suing the president based upon an express indemnity contract, not upon any contract between the president and the insurance company.
 Similarly, Thilman & Co. v. Esposito, 87 Ill.App.3d 289, 42 Ill.Dec. 305, 408 N.E.2d 1014 (1st Dist.1980), involved a situation where the agent expressly offered to pay a portion of an outstanding corporate debt immediately and to repay the remaining balance in equal monthly installments; plaintiff accepted such offer. Thus, coming within the exception to the rule of law "that where an agent discloses the name of his principal ..., the agent is not personally liable on the contract unless he so agrees." 87 Ill.App.3d at 295, 42 Ill.Dec. at 310-11, 408 N.E.2d at 1019-20 (emphasis added).
 
 
 [10]
 This may seem an unusual contention for a plaintiff to make; however, Fuller seeks to avoid the necessity of expert witness testimony as to the standard of care demanded of architects. Thus, it is not the higher standard of care which hinders Fuller in proving its case, but the necessity (in some instances) of adducing the testimony of an expert to establish that higher standard
 
 
 [11]
 In setting this standard, the court in Miller stated:
 [The architects'] duties here were not limited to the preparation of plans and specifications. They also included, in addition, supervision of construction.... The skill and diligence which they were bound to exercise are such as are ordinarily required of architects. The efficiency of an architect in the preparation of plans and specifications is tested by the rule of ordinary and reasonable skill usually exercised by one in that profession.
 * * *
 They were under a duty to exercise ordinary, reasonable care, technical skill, and ability and diligence, as are ordinarily required of architects, in the course of their plans, inspections, and supervision during construction for the protection of any person who foreseeably and with reasonable certainty might be injured by their failure to do so.
 
 
 [208]
 N.E.2d at 284 (emphasis added)
 
 
 [12]
 None of the cases cited by Fuller holds to the contrary inasmuch as none addresses the issue of standard of care owed by an architect to a contractor. Gateway Erectors Division v. Lutheran General Hospital, 102 Ill.App.3d 300, 58 Ill.Dec. 78, 430 N.E.2d 20 (1st Dist.1981); W.H. Lyman Construction Co. v. Village of Gurnee, 84 Ill.App.3d 28, 38 Ill.Dec. 721, 403 N.E.2d 1325 (1980); Normoyle-Berg & Associates, Inc. v. Village of Deer Creek, 39 Ill.App.3d 744, 350 N.E.2d 559 (1976). At best, these cases stand for the proposition that an architect owes a duty of care to the contractor, requiring the architect to avoid negligently causing extra expenses for the contractor in completing the project. Gateway Erectors, 102 Ill.App.3d at 302, 58 Ill.Dec. at 82, 430 N.E.2d at 24; W.H. Lyman Construction Co., 84 Ill.App.3d at 39-40, 38 Ill.Dec. at 729, 403 N.E.2d at 1333; Normoyle-Berg & Associates, Inc., 39 Ill.App.3d at 745, 350 N.E.2d at 559
 
 
 [13]
 The IPI Committee comment to p 105.01 indicates that expert testimony is necessary "only when the breach of duty complained of is not a matter of common knowledge." Several courts have ruled that the plaintiff must produce the testimony of an expert witness to enable the jurors to formulate an expected standard of competence in the architectural field with which to judge the alleged negligence of the defendant architect. Covil v. Robert & Co., 112 Ga.App. 163, 144 S.E.2d 450, 453-54 (1965); 530 East 89 Corp. v. Unger, 43 N.Y.2d 776, 402 N.Y.S.2d 382, 373 N.E.2d 276, 277 (1977) ("It is incumbent upon the plaintiff to present expert testimony to support allegations of malpractice ... except where the alleged act of malpractice falls within the competence of a lay jury to evaluate...."); Nauman v. Harold K. Beecher & Assoc., 24 Utah 2d 172, 467 P.2d 610 (1970). Cf. Mississippi Meadows, Inc. v. Hodson, 13 Ill.App.3d 24, 28, 299 N.E.2d 359, 362 (1973); Society of Mount Carmel v. Fox, 90 Ill.App.3d 537, 542, 46 Ill.Dec. 40, 44, 413 N.E.2d 480, 484 (2d Dist.1980); Annot., Necessity of Expert Testimony to Show Malpractice of Architect, 3 A.L.R. 4th 1023 (1981)
 
 
 [14]
 Additionally, CCOM contends that the district court erroneously excluded certain evidence relevant to this count. To constitute reversible error, the exclusion of evidence must constitute a "clear abuse of discretion," Ellis v. Chicago, 667 F.2d 606 (7th Cir.1981), the exclusion must affect a "substantial right of the party," Fed.R.Evid. 103(a), and the substance of the evidence must be made known to the court by an offer of proof unless it is apparent from context, Fed.R.Evid. 103(a)(2). CCOM sought to introduce evidence relating to projects other than CCOM's which allegedly showed that during the time Fuller was working on the CCOM project, the Chicago Fuller office had cost overruns on many jobs, falsified financial reports and progress reports on many jobs, and violated a major percentage of Fuller's company policies. Although not totally irrelevant to this case, the district court did not abuse its discretion in balancing the relevancy against other factors listed in Rule 403 of the Federal Rules of Evidence. Moreover, this evidence would not alter this court's conclusion with respect to the ruling on the directed verdicts
 
 
 [15]
 Allegations of fraud, in a civil case, must be established by clear and convincing evidence. Merit Ins. Co. v. Colao, 603 F.2d 654, 658 (7th Cir.1979), cert. denied, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); Ray v. Winter, 67 Ill.2d 296, 304, 10 Ill.Dec. 225, 229, 367 N.E.2d 678, 682 (1977); Vance Pearson, Inc. v. Alexander, 86 Ill.App.3d 1105, 1109, 42 Ill.Dec. 204, 207, 408 N.E.2d 782, 785 (4th Dist.1980)
 
 
 [16]
 The trial court said with regard to Count II:
 [T]here is no evidence supporting these fraud allegations that the chief executive officer of Fuller, a man named Hessmer who hasn't been called here and his subordinates devised any scheme and artifice to defraud. If there was a scheme and artifice to defraud, it had to be between Hessmer and the initial estimator [Fullington] for this corporation, but there is no evidence like that here. No reasonable jury in a case like this could so find from its verdict and if it returned such a verdict the court would have to set aside that verdict.
 
 
 [17]
 Testimony by Schaerer would support a finding that on June 25, 1975, CCOM and Fuller agreed to pay Fuller for three months payment application ($800,059.20) without lien waivers if Fuller agreed to pay the subcontractors immediately, and Fuller would obtain waiver of liens within ten days of payment. On June 28, 1975, CCOM paid Fuller the agreed sum. The compromise reached on June 25, 1975 also agreed to drop certain payment requests. However, on July 2, 1975, Fuller submitted its June, 1975 payment application containing delay and other claims which CCOM had understood to have been settled at the June 25, 1975 compromise discussion. Furthermore, testimony by Edward Mullaney (an employee of Fuller during the project) would support a finding that Fuller delayed paying the subcontractors for months after the June 28, 1975 payment. Finally, there is evidence that at a November 25, 1975 meeting, Fuller demanded one million dollars as a precondition to performing any further work under the contract. As a result, CCOM terminated Fuller
 
 
 [18]
 The district court explained its ruling as follows:
 Now turning to Count 3, any one with a fair mind could see that what Mr. Hessmer was trying to tell Dr. Schaerer was that he and his subordinate had gone to City Hall, he said, and had paid the money. Now this Court knows enough about these sordid kinds of transactions to know, as I said earlier in these proceedings, that it isn't every time somebody pays somebody something in an office in order to get official duties performed that he is paying a bribe. The matter wasn't developed before this jury. There's the possibility that Mr. Hessmer and his colleagues were the victim of an extortion by someone in City Hall. Something that happens with great frequency.
 
 
 [19]
 CCOM relies principally on Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp., 29 Ill.App.3d 339, 330 N.E.2d 540 (1975), rev'd on other grounds, 64 Ill.2d 338, 1 Ill.Dec. 75, 356 N.E.2d 75 (1976), and Kelsay v. Motorola, Inc., 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Ledingham arose within the field of insurance law and has not been relied upon in other fields by analogy. Martin v. Federal Life Ins. Co., 109 Ill.App.3d 596, 65 Ill.Dec. 143, 151 n. 2, 440 N.E.2d 998, 1006 n. 2 (1st Dist.1982). In Kelsay, the Illinois Supreme Court first recognized the tort action of retaliatory discharge in an at-will employment situation based upon public policy. The court in Kelsay gave no indication that it was recognizing a general tort of bad faith dealing, and the Illinois Appellate Court has not interpreted either Kelsay or Ledingham as doing so. Martin v. Federal Life Ins. Co., 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1st Dist.1982)
 
 
 [20]
 In Martin, the court refused to extend Ledingham beyond the area of insurance law, reasoning:
 Care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general contract principle of good faith and fair dealing.
 
 
 [109]
 Ill.App.3d 596, 65 Ill.Dec. 143, 151, 440 N.E.2d 998, 1006
 
 
 [21]
 Counsel for CCOM argued as follows:
 MR. MOORE: Your Honor, again, if I may, earlier I brought up the question of this type of instruction with a long laundry list of argumentative assertions and issues and really taken from the pleadings. I think that we should have a fairly simple issue instruction for all contract claims, ... because as soon as we get away from this format I think we start arguing about the evidence and that sort of thing.
 (Emphasis added.)
 
 
 [22]
 The four duties which CCOM claims the district court wrongfully included were: (1) supply plans and specifications free of any defects that would interfere with the performance of the work, (2) refrain from interfering with the relationships between Fuller and its subcontractors, (3) promptly decide questions arising during the work, and (4) grant an extension of time and allowance for delay damages in an appropriate amount. With respect to the merits of including such obligations, see generally Williston on Contracts, Sec. 887 (3d ed. 1962)
 
 
 [23]
 The district court instructed the jurors:
 [I]t is the law under the contract between these parties that [CCOM] had the following obligations:
 1) Supply plans and specifications which were free of defects that would interfer [sic] with and impede the performance of the work,
 2) make timely and appropriate payments,
 3) provide surveys and other necessary information about the job site,
 4) refrain from interfering with Fuller's relations with its subcontractors,
 5) make timely decisions on questions that arose during the progress of the work,
 6) grant an extension of time and allowance for delay damages in an appropriate amount.
 Fuller claims that [CCOM] failed to meet one or more of the foregoing obligations and that such failure was the cause of losses to Fuller which were foreseeable and within the contemplation of the parties.
 R. 576 at 35.
 
 
 [24]
 A party need not move for a new trial challenging the alleged errors as a prerequisite to appeal. Wright & Miller, Federal Practice and Procedure Sec. 2818 (1973)
 
 
 [25]
 The court gave the jury a different agency instruction:
 The various parties to this lawsuit conduct their business affairs through the actions of their employees, agents or other representatives. Whenever in these instructions I refer to a party as doing something, saying something or otherwise taking action, I mean through the actions of its employees, agents or other representatives.
 In particular, the Chicago College of Osteopathic Medicine retained Schmidt, Garden and Erickson to serve as its architect and representative. [SGE] had the authority to act on behalf of CCOM during construction of the clinic to the extent provided in the Contract documents.
 
 
 [26]
 The contract between Fuller and CCOM provided:
 The Architect will be the Owner's representative during construction and until final payment. The Architect will have authority to act on behalf of the Owner to the extent provided in the Contract Documents, unless otherwise modified by written instrument which will be shown to the Contractor. The Architect will advise and consult with the Owner, and all of the Owner's instructions to the Contractor shall be issued through the Architect.
 CCOM Ex. 2 p 2.2.2, App. 263. Fuller interpreted this language to mean that SGE was CCOM's agent, even in the preparation of the plans and specifications. In contrast, CCOM asserted that SGE acted as an independent contractor in preparing the plans and specifications.
 
 
 [27]
 You will search [Fuller Ex. 68] ... in vain for any reference to any problems on this job.... There's no reference to delays by Fuller. There's no reference to foulups by Fuller. There's no reference to the fact that Fuller didn't get permits
 Here again you can dip into the reservoir of your common experience, and you can apply and attempt to understand why ... there are no references.... Was it because Fuller was at fault?
 I think they would have felt rather free to tell the public that Fuller was at fault. Was it because the college and Schmidt, Garden & Erickson had between them coupled with the concrete strike caused at least 10 or 11 months' delay by this time? ... Then there is reason for them to leave it out of what they say....
 
 
 [28]
 What I am rebutting is the argument of Mr. Harrold and Mr. Kehoe about what they had to say about our charges against Fuller
 Mr.--It was a strange argument. Mr. Harrold brought up a bond prospectus that, by the way, is dated--I suggest that you look at it. I really do suggest you look at it. It was dated June 10, 1975, and it was a printed thing, so Lord knows when it was prepared, but it is dated June 10, 1975, sometime before that, almost three weeks before this whole thing blew up, and his arguments that it doesn't say in it that Fuller is trying to cheat us. We didn't know that until three weeks later, so I don't know how we could print it in a bond prospectus, and yet that was the whole kickoff of his case. If it meant anything, why wasn't there a witness in here to testify about it, a witness to subject himself to what we call "the great legal engine to find the truth," cross examination.
 
 
 [29]
 As CCOM's closing argument did not affirmatively rely on exhibit 68 but only assumed the existence of such evidence, CCOM did not waive its right to object by merely meeting Fuller's argument. M. Graham, Handbook of Federal Evidence Sec. 103.4 at 17 (1981)
 
 
 [30]
 The district court considered it unfair for a plaintiff to list a witness he plans to call, then decide not to call the witness, electing instead to argue to the jurors that the defendant's failure to call the witness indicates that the witness would have given testimony detrimental to the defendant's position. The court also observed that Hessmer is no longer working for Fuller
 
 
 [31]
 Annot., In Argument of Civil Case, on Adversary's Failure to Call Employee as Witness, 68 A.L.R.2d 1072 at Sec. 7 (1959)
 
 
 [32]
 See also Annot., In Argument of Civil Case, on Adversary's Failure to Call Employee as Witness, 68 A.L.R.2d Sec. 4 at 1078 (collecting cases recognizing this qualification and cases to the contrary). Cf. Tuthill v. Belt Railway Co., 145 Ill.App. 50 (1st Dist.1908) (a defendant is not obliged to produce a former employee at trial and defendant's failure to do so does not give rise to any unfavorable inference). But cf. Santiemmo v. Days Transfer, Inc., 9 Ill.App.2d 487, 133 N.E.2d 539, 549 (1st Dist.1956) (although the "missing witness" was defendant's former employee, the court seemed to rely not on this fact, but upon the fact that defendant had attempted to explain the former employee's absence, thereby invoking the rule that "where a party attempts an explanation of why a witness was absent the other party has a right to comment on what he considers the inadequacy of the explanation.")
 
 
 [33]
 With respect to the ambiguity of the missing witness inference, see generally United States v. Busic, 3 Cir., 587 F.2d 577, cert. dismissed, 435 U.S. 964, 98 S.Ct. 1631, 56 L.Ed.2d 72 (1978) (can only infer evidence not sufficiently helpful to present whether because of jury fatigue, burden of proof already met, unsavory demeanor of witness, etc.); McCormick, Evidence Sec. 272 at 657 (2d ed. 1972)