983 F.2d 1065
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ridrique K. BELLMORE, Plaintiff-Appellee,
v.
UNITED STATES STEEL CORPORATION, Defendant,
USS Great Lakes Fleet, Inc., Defendant-Appellant.
 No. 91-2242.
 United States Court of Appeals, Sixth Circuit.
 Dec. 18, 1992.
 
 Before BOGGS and SUHRHEINRICH, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 * SUHRHEINRICH, Circuit Judge.
 
 
 1
 Plaintiff Rodrique K. Bellmore, an employee of defendant USS Great Lakes Fleet, Inc., (GLF), was injured on June 13, 1987, during a "make dock" maneuver when his fellow employees dropped him while lowering him onto the dock. Plaintiff brought suit, asserting state and federal claims. GLF admitted liability, leaving plaintiff's damages as the exclusive issue for trial. The jury returned a verdict in Bellmore's favor in the amount of $125,000. GLF appeals the district court's denial of its motions for new trial, and remittitur. After careful review of the record, we AFFIRM.
 
 II
 
 2
 Defendant's first issue concerns a statement made by Bellmore's attorney during closing argument suggesting that defendant's failure to call certain fellow employees of plaintiff was because their testimony would have been unfavorable to defendant. At trial, defendant immediately objected to the statement and requested a curative instruction. The district court sustained the objection but denied the instruction. On appeal, GLF contends that a court's failure to give a curative instruction warrants a new trial.
 
 
 3
 In general, the grant or denial of a new trial is exclusively within the trial court's discretion. Logan v. Dayton Hudson Corp., 865 F.2d 789, 790 (6th Cir.1989). Abuse of discretion occurs when the trial court commits a clear error of judgment and a substantial right of a party is affected. Id. See also Tyler v. White, 811 F.2d 1204, 1207 (8th Cir.1987) (missing witness comments during closing argument do not constitute reversible error unless "substantial right" of party is affected). In civil trials, improper comments during closing argument rarely rise to the level of reversible error. Ramsey v. American Air Filter Co., 772 F.2d 1303, 1311 (7th Cir.1985).
 
 
 4
 Under the missing witness rule, the factfinder may draw an inference of unfavorable testimony from an uncalled witness, but only when "a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction." Chicago College of Osteopathic Medicine v. George A. Fuller Co., 719 F.2d 1335, 1353 (7th Cir.1983) (citations omitted). To permit the drawing of an unfavorable inference, a party must show either that the missing witness is physically available only to his adversary or that the relationship between the witness and the opponent effectively renders the testimony unavailable. Id. See also Littlefield v. McGuffey, 954 F.2d 1337, 1346, 1347 (7th Cir.1992). If the uncalled witnesses are equally available to both parties, no inference should be drawn. Harkins v. Perini, 419 F.2d 468, 471 (6th Cir.1969); Herbert v. Wal-Mart Stores, Inc., 911 F.2d 1044, 1048 (5th Cir.1990).
 
 
 5
 Here, not only did Bellmore's attorney not offer proof that the uncalled witnesses were peculiarly within GLF's control, but the record reveals that the absent witnesses were equally available to plaintiff and defendant. Bellmore deposed several of the missing witnesses, and listed several as prospective witnesses in the final pretrial order. Thus, plaintiff was not entitled to a "missing witness" inference, and the district court erred in not giving a specific curative instruction.
 
 
 6
 Notwithstanding, we find the error harmless since the district court sustained the objection, and shortly thereafter instructed the jurors that "[a]nything an attorney says is not evidence in this matter. If it's said in the context of argument, it's merely that of the attorney's opinions or theory." Further, the improper comment was relatively brief and was not repeated. See Ramsey, 772 F.2d at 1311; see also, Tyler, 811 F.2d at 1207 (where verdict was supported by other evidence, court was reluctant to overturn it "after a four-day trial, on the weight of so small and technical an error as [an improper missing witness comment]"). At the same time, we caution Bellmore's attorney not to repeat such an error in the future.
 
 
 7
 Defendant also takes issue with the district court's refusal to allow GLF to present expert testimony concerning the distance Bellmore fell. The district court ruled that because there was no testimony relating the distance to damages, Captain Wilson's testimony was immaterial. Defendant maintains that "whatever distance Bellmore fell would bear directly to the nature and extent of any injury Bellmore might have sustained." We review for an abuse of discretion. Logan, 865 F.2d at 790.
 
 
 8
 We have combed the entire trial transcript, and like the district court, are unable to find any evidence that relates the distance fallen with the nature and extent of Bellmore's injuries. Absent that, we agree with the district court that the distance of the fall was not a "fact that is of consequence to the determination of the action," Fed.R.Evid. 401; and is therefore inadmissible. Fed.R.Evid. 402. See also United States v. Dunn, 805 F.2d 1275, 1281 (6th Cir.1986) (discussing rules 401, 402, 403); see generally, 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence § 401 (1992) ("if an item of evidence tends to prove a fact that is not of consequence to the action" the evidence is irrelavant). Bellmore's statement on direct that he dropped a foot or so does not change the result, since it provides merely a description of the incident and is not linked to the degree of plaintiff's injuries.
 
 
 9
 Lastly, defendant argues that the district court erred in failing to grant its motion for remittitur. We cannot say that the award was so disproportionately large as to "shock the judicial conscience," as there is evidence in the record to support plaintiff's injuries. Matulin v. Village of Lodi, 862 F.2d 609, 614-15 (6th Cir.1988) (citation omitted). We therefore find no abuse of discretion by the lower court. Agristor Leasing v. A.O. Smith Harvestore Prods., Inc., 869 F.2d 264, 268 (6th Cir.1989).
 
 
 10
 AFFIRMED.
 
 WELLFORD, Senior Circuit Judge, dissenting:
 
 11
 My colleague, Judge Suhrheinrich, has adequately set out the facts in this case. I agree with Judge Suhrheinrich's conclusion that the district court erred by failing to give a curative instruction. Plaintiff's counsel noted the defendant's failure to call certain fellow employees as witnesses, and defendant immediately objected and requested a curative instruction. Absent such an instruction, that remark was unacceptably prejudicial. While this error, standing alone, may not warrant a new trial, I am persuaded that, combined with other factors, this circumstance warrants a new trial. It is significant that counsel made the objectionable comment during his final summation to the jury.
 
 
 12
 I am persuaded that a second error occurred which was prejudicial to the defendant. While the ship on which plaintiff worked was docking, plaintiff fell from the ship onto the pier. He claims to have sustained serious, continuous injuries from the fall. Apparently, neither party gave particular direct evidence concerning the distance involved, but defendant contended that it was a short distance. Defendant offered expert proof on this subject which was rejected by the district court as immaterial. In my view, this ruling was erroneous because all of the factors involved in the fall are pertinent in assessing the seriousness of the claimed injury. There was a material issue in this case as to whether Bellmore suffered any substantial permanent injury at all. Plaintiff addressed this issue briefly, concluding with the citation of two cases, that "the [trial] court properly excluded the testimony as being confusing and of no probative value ... this was a factual matter that did not bear on any relevance...."
 
 
 13
 The first case cited by plaintiff on exclusion of evidence, Salem v. United States Lines Co., 370 U.S. 31, 36 (1962), involved a situation in which there was "sufficient evidence, both from oral testimony and from photographs ... to visualize the platform on and from which plaintiff fell and to determine whether some railing or hand hold ... was reasonably necessary." Salem is distinguishable because in this case there is neither clear testimony nor photographic evidence concerning the distance of the fall. The issue, moreover, is different; in Salem, the question was whether a platform from which plaintiff fell was unsafe. Here, the principal issue is the nature and extent of plaintiff's injuries. McLaurin v. Fischer, 768 F.2d 98 (6th Cir.1985), the second case, involved a repetitious or cumulative evidence holding after plaintiff had produced ten witnesses on the single issue of whether defendant's reasons for discharging plaintiff were legitimate or pretextual. McLaurin is not persuasive in this context, although it states a correct principle that the district court has "considerable latitude" in dealing with cumulative evidence. Id. at 104.[1]
 
 
 14
 Plaintiff's testimony about his fall was confusing about the distance involved:
 
 
 15
 A. Well, on the Sloan you got a--they've got a hand railing up forward, it's called bulwarks. The place you've got to get off is about four foot off the keg, 34 steps off the--you stand on top of this bulwark and have a landing boom and chair lowered down to your height. Then the men at the other end say let's go, try one, whatever the comment. Maybe you swing off. You help push off because these things aren't very--you gotta like help push yourself away from the boat normally to make the dock because these things don't swing very freely usually.
 
 
 16
 When it happened they swung--fell up against that--there's a rig there. They swung me up against the rig, and as the boat was coming in it bent the rig and I went down like a foot or so, and from there the next thing I knew I was on the dock. I felt one little tiny jerk, then the next thing I was--landed on the dock or half on the dock and half behind the--there's a cement piece like maybe six or eight foot wide there, and when my foot landed--my left foot was here and my right foot a little lower, like on top of some boulders.
 
 
 17
 Q. Okay. Now, when you were being swung out over the side, where were you standing?
 
 
 18
 A. Up on top of the bulwarks where they've got a little landing made. They've got a little landing up there where you go to step onto this landing boom to be swung over the side.
 
 
 19
 Q. How high above the main deck is the platform that you were standing--
 
 
 20
 A. On the Sloan--when I was there I would say it's at least four foot. It's high as what the bulwarks are, the curved part down there.
 
 
 21
 (emphasis added). In another part of his testimony, Bellmore referred to a distance of five feet. It appears to me that expert testimony, upon reconstruction of the pertinent facts involved, would have been helpful and relevant to the jury in deciding the distance of the fall--a seriously contested issue since it bears upon damages and the nature and extent of Bellmore's injury.
 
 
 22
 The jury award for damages in this case seems excessive beyond any reasonable bounds. Bellmore, it is important to note, was able to work for about two weeks after his accident. He then went to Dr. Ursula for an examination, who referred him to a specialist, Dr. Hans. Plaintiff does not rely on the testimony of either of these doctors to establish a permanent knee injury. A few weeks later, he visited Dr. Hans on several occasions. By his own admission, plaintiff returned to work a few days later. Bellmore himself testified that he missed only six or seven weeks of work as a result of the injury. Over the next several years, Bellmore continued to work both in the winter and in maritime work during the season. He did not, during this time, complain to examining doctors about any recurring knee problem, nor did he request limited or restricted work assignments.
 
 
 23
 During this time frame, examining doctors observed Bellmore's range of motion to be normal. To be sure, plaintiff presented evidence at the trial of a medical specialist who examined him once immediately before trial. Dr. Newman, plaintiff's expert, was the only doctor, among the many who examined Bellmore during the five years after the accident, who opined that his knee condition was a continuing, degenerative problem. Defendant's expert medical testimony was that the "stability" of Bellmore's knee was "excellent" and there was no atrophy, and no evidence of a "tear." During the five year period, Bellmore's physicians (some of them doctors of his choice rather than his employer's) also noted a full range of knee motion and directed no work restriction.
 
 
 24
 Under all of these circumstances, I find the jury verdict for damages to be clearly excessive. Taking all of these factors into account, I would therefore reverse the judgment and remand for a new trial.
 
 
 
 [1]
 United States v. Dunn, 805 F.2d 1275, 1281 (6th Cir.1986), states correctly:
 To be admissible, the proposition for which the relevant evidence is offered must be material; that is, the proposition to be proved must be a matter or issue in dispute in the case.