### In re CINCOM IOUTSOURCE, INC., Debtor.

No. 06–12778.

United States Bankruptcy Court, S.D. Ohio, Western Division.

Nov. 20, 2008.

Richard D. Nelson, Cincinnati, OH, for Debtor.

Mark A. Greenberger, Cincinnati, OH, Trustee pro se.

Neal J. Weill, Neal J. Weill, Attorney at Law, LLC, Cincinnati, OH, for U.S. Trustee.

Nicholas J. Pantel, Assistant U.S. Attorney, Cincinnati, OH, for Intervenor.

## ORDER FINDING CLAIM OF FIRST FINANCIAL CORPORATE SERVICES, INC. TO BE ELIGIBLE FOR PAYMENT UNDER 11 U.S.C. § 726(a)(2)(C)

JEFFERY P. HOPKINS, Bankruptcy Judge.

Presently before the Court is the Motion For Order Deeming Proof Of Claim Filed By First Financial Corporate Services, Inc. As Timely ("Motion") (Doc. 120). First Financial Corporate Services, Inc. ("FFCS") is the movant. The Motion is opposed by General Electric Capital Corporation ("GECC") and the chapter 7 trustee ("Trustee"). A hearing on the Motion was held on October 22, 2008.

### ISSUE

The issue presented is whether the late filed, general unsecured claim of FFCS is entitled to payment under 11 U.S.C. § 726(a)(2)(C), which provides in relevant part:

[P]roperty of the estate shall be distributed—

. . .

(2) second, in payment of any allowed unsecured claim . . . proof of which is—

. . .

(C) tardily filed under section 501(a) of this title, if—

(I) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and

(ii) proof of such claim is filed in time to permit payment of such claim[.]

### FACTS

The schedules and creditor matrix filed with the petition did not include FFCS. The deadline to file a non-governmental proof of claim was December 26, 2006. On February 26, 2007, the Debtor amended Schedule F to include FFCS.

Thomas Slevin is an officer and one of two shareholders of FFCS. Mr. Slevin was the person at FFCS that was responsible for handling all issues related to this bankruptcy case. He first learned of this case in March of 2007 when he received a copy of the amended Schedule F. If someone at FFCS knew about this case beforehand, Mr. Slevin believes he would have been notified.

Although the Trustee has made distributions to some administrative claimants, he has yet to make any distributions on timely filed, general unsecured claims.

### ANALYSIS

### I. Application of § 726(a)(2)(C)

■ "To succeed under Section 726(a)(2)(C), the creditor holding such claim must prove that notice was not received or that the creditor did not have actual knowledge of the case in time to file a timely proof of claim under section

501(a); and that the proof of claim is filed in time to permit payment of such claim." *In re Meyers,* 171 B.R. 274, 277 (Bankr. N.D.Ohio 1994).

### A. Notice or Actual Knowledge

■ FFCS established that it did not receive notice or possess actual knowledge of this case prior to the December 26, 2006 claims bar date.

### 1. Notice.

FFCS was not included as a creditor in this case until the Debtor amended Schedule F on February 26, 2007. Consequently, the Clerk did not serve notice of the case on FFCS prior to the passing of the claims bar date which had been set in the case, December 26, 2006.

### 2. Actual Knowledge.

Mr. Slevin testified credibly that he did not acquire actual knowledge of the case until he received the amendment to Schedule F in March of 2007. If someone else at FFCS had learned of the case at an earlier date, Mr. Slevin further stated that he would have been informed of this. He was not, according to his testimony. No other evidence was introduced to contradict these statements, and Mr. Slevin's version of what had happened appeared to hold together despite a vigorous cross examination.

### 3. Does the Missing Witness Rule help prove that FFCS had actual knowledge?

GECC asks the Court to draw an inference against FFCS under the missing witness rule. GECC cites *Bellmore v. United States Steel Corp.,* No. 91–2242, 1992 WL 376952 (6th Cir. Dec.18, 1992) for the proposition that "the fact finder may draw an inference of unfavorable testimony from an uncalled witness . . . when 'a party has it

peculiarly within his power to produce witnesses whose testimony would elucidate the transaction.' " *Id.* at *1 (quoting *Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335, 1353 (7th Cir.1983)).

GECC argues that the testimony of two law firms that represent FFCS in New Jersey litigation would "elucidate" whether FFCS knew of this bankruptcy case prior to the December 26, 2006 claims bar date. GECC contends that this Court should infer that FFCS knew of this bankruptcy case prior to the claims bar date because these law firms: (1) advised FFCS of the existence of this bankruptcy case prior to the claims bar date; or (2) as agents of FFCS, possessed knowledge of this bankruptcy case prior to the claims bar date.

■ The first firm, Aronsohn, Weiner & Salerno ("AWS"), was hired by FFCS in March of 2008 to file a lawsuit against Cincom Systems, Inc., Ashish Paul and Greg Rhodes in the United States District Court for the District of New Jersey. Contrary to the position of GECC, AWS could not have possibly advised FFCS of the existence of this bankruptcy case prior to the December 26, 2006 claims bar date because AWS was not hired by FFCS until March of 2008. Similarly, AWS did not become the agent of FFCS until March of 2008.

■ The second firm, Sokol, Behot & Fiorenzo ("SBF"), was hired to defend FFCS in six lawsuits filed against it. SBF was hired by FFCS prior to the December 26, 2006 claims bar date.[1] Nevertheless, the Court is not compelled to draw the inference requested by GECC. First, such an inference is permissive, not mandatory. *Crossley Constr. Corp. v. NCI Bldg. Sys., L.P.,* 123 Fed.Appx. 687, 693 (6th Cir.2005) ("The missing witness rule, however, does not *require* the trier of fact to draw a negative inference. To the contrary, the rule operates to *permit* the trier of fact to draw the negative inference."). Second, courts are unlikely to permit the inference where the information allegedly held by the missing witness is privileged. 2 McCormick on Evidence § 264 (2006). In this case, testimony by SBF would be subject to the attorney-client privilege. Lastly, GECC simply makes unsupported assertions that SBF may have known about this bankruptcy case. *See Crossley,* 123 Fed.Appx. at 693 (application of missing witness rule unwarranted where, *inter alia,* proponent presented only "unsupported assertions" of what missing witness would have said). Contrary to GECC's assertions, Mr. Slevin testified that he did not learn about this case until March of 2007. He also testified that FFCS did not hire SBF as bankruptcy counsel. Thus, SFB was not charged with advising FFCS about this, or any other, bankruptcy case.

Under these circumstances, the Court will not infer that FFCS knew of this bankruptcy case prior to the claims bar date simply because AWS and SBF did not testify at the October 22, 2008 hearing.[2]

---

1. SBF prepared a proof of claim that FFCS filed on May 8, 2006, in a New Jersey bankruptcy case that is somewhat related to this case.

2. GECC draws the Court's attention to a third individual who did not appear as a witness, Richard Stebbins. Mr. Stebbins is the other shareholder of FFCS. GECC did not ask the Court to apply the missing witness rule with respect to Mr. Stebbins. It did, however, ask the Court to weigh Mr. Stebbins' absence in relation to the burden of proof.

FFCS satisfied its burden of proof, notwithstanding the absence of Mr. Stebbins. Mr. Slevin was the FFCS employee charged with handling all issues concerning this bankruptcy case. The record reflects that Mr. Slevin would have been notified if another FFCS employee learned anything about this case. Mr. Slevin testified that he did not learn of

Rather, we conclude, on the record before us, that the creditor, FFCS, met its burden under the first prong of § 726(a)(2)(C). FFCS did not receive notice, nor did it have actual knowledge, of the bankruptcy case in time to file a timely proof of claim before the established bar date.

We turn next to the second prong of § 726(a)(2)(C) raised by the contestants in this litigation. The parties strive mightily against one another over whether the FFCS claim was timely filed within the parameters of the statute. A side debate erupts also between the litigants concerning the impact of Sixth Circuit case law remotely related to the Code section being construed. We find this debate intriguing, but not terribly germane to the determination in the case.

### B. Claim Filed In Time To Permit Payment

■ FFCS filed a proof of claim on August 25, 2008, As of the October 22, 2008 hearing, the Trustee had only paid a few administrative claimants. He had not made any distributions to general unsecured claimants. Accordingly, FFCS filed its claim in time to be paid pro-rata with other claimants under § 726(a)(2).

### II. *Cardinal Mine* and *Century Boat*

GECC and the Trustee argue that Sixth Circuit precedent precludes payment of FFCS under § 726(a)(2)(C). *See United States v. Cardinal Mine Supply Inc.*, 916 F.2d 1087 (6th Cir.1990); *see also Internal Revenue Service v. Century Boat Co.*, 986 F.2d 154 (6th Cir.1993).

### A. *Cardinal Mine*

In *Cardinal Mine*, the Internal Revenue Service ("IRS") filed an untimely priority claim because it did not know about the bankruptcy case prior to the claims bar date. The bankruptcy court sustained the chapter 7 trustee's objection to the claim. The court determined that § 726(a)(1) did not include late filed claims and § 726(a)(2)(C) did not include priority claims. It held that the claim should be paid under § 726(a)(3), pro rata with other late filed claims that do not qualify under § 726(a)(2)(C). The district court affirmed. The IRS argued that its priority claim could not be subordinated to non-priority claims. *Cardinal Mine*, 916 F.2d at 1088. The Sixth Circuit agreed, concluding that the claim should be paid under § 726(a)(1), pro rata with timely filed priority claims. *Id.* at 1092.

GECC and the Trustee seize upon the following language in the Sixth Circuit's decision: "the creditor must be permitted to file tardily *when the creditor does so promptly after learning of the bankruptcy*" *Id.* at 1089 (emphasis added). Based upon this language, they argue that FFCS is not entitled to payment under § 726(a)(2)(C) because FFCS did not file its claim promptly after learning of the bankruptcy.

*Cardinal Mine* does not add a promptness requirement to the plain language of § 726(a)(2)(C) because *Cardinal Mine* is not a § 726(a)(2)(C) decision.[3] *Cardinal Mine* addressed the issue of whether the IRS claim should be paid under § 726(a)(3), as the lower courts held, or § 726(a)(1). The Sixth Circuit concluded that § 726(a)(1) controlled. *Cardinal*

---

this case, from Mr. Stebbins or otherwise, until March of 2007.

**3.** Moreover, unlike the version of § 726(a)(1) applied in *Cardinal Mine*, § 726(a)(2)(C) has a timing requirement built into the statute. The

untimely claim will not be paid under § 726(a)(2)(C) unless "proof of such claim is filed in time to permit payment of such claim." *See* § 726(a)(2)(C)(ii).

*Mine,* 916 F.2d at 1092 ("Where, as here, the reason for late filing of a priority claim is the failure to give the creditor notice, it should be treated the same as timely filed priority claims entitled to distribution under section 726(a).").[4] *Cardinal Mine* did not consider the requirements of § 726(a)(2)(C). The bankruptcy court, the district court and the Sixth Circuit all operated from the belief that § 726(a)(2)(C) did not govern payment of the IRS' priority claim. Two years later, *Century Boat* confirmed the limited scope of *Cardinal Mine.*

### B. Century Boat

*Century Boat* also involved a late filed priority claim of the IRS, which did not know about the bankruptcy prior to the claims bar date. Once it learned of the case, the IRS did not file its claim for approximately two years. The chapter 7 trustee objected to the claim. Relying on the promptness language in *Cardinal Mine,* quoted above, the trustee argued that the two year delay was distinguishable from *Cardinal Mine,* where the claim was filed within ten days of learning of the bankruptcy. The bankruptcy court and district court agreed. The Sixth Circuit reversed. *Century Boat,* 986 F.2d at 158. It concluded that the claim was entitled to pro rata distribution with priority claims under § 726(a)(1) where: (1) the claim was filed before the trustee made any distribution; (2) there was no undue prejudice to other creditors; and (3) there was no evidence of bad faith or unreasonable delay by the IRS. *Id.*

GECC and the Trustee would have the Court apply *Century Boat* to the treatment of a non-priority claim under § 726(a)(2)(C). They contend that the

FFCS claim is not entitled to treatment under § 726(a)(2)(C) because: (1) the Trustee has made some administrative distributions; (2) other creditors would be prejudiced; and (3) there has been an unreasonable delay by FFCS.

As with *Cardinal Mine,* GECC and the Trustee read *Century Boat* more broadly than written. In *Century Boat,* the Sixth Circuit included the further qualifying language;

> We simply decided [in *Cardinal Mine* ], and we reaffirm today, the principle that a *priority* creditor who fails to receive notice of the bankruptcy and consequently files an untimely proof of claim is not barred from receiving *priority* distribution as a matter of law *Cardinal Mine Supply* established a narrow exception for *priority* creditors who lack notice of the bankruptcy.

*Century Boat,* 986 F.2d at 158 (emphasis added). Therefore, *Cardinal Mine* and *Century Boat* govern untimely *priority* claims only and whether those claims are to be paid under § 726(a)(1).

### C. 1994 Amendments

That *Cardinal Mine* and *Century Boat* are limited to priority claims is further confirmed by: (1) the history of § 726(a)(1); and (2) *United States v. Simon,* No. 95–1306, 1996 WL 580475 (6th Cir. Oct.8, 1996).

At the time of *Cardinal Mine* and *Century Boat,* § 726(a)(1) read as follows:

> [P]roperty of the estate shall be distributed—
>
> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title[.]

---

4. The Circuit further explained: "[S]ection 726(a)(2) excludes subsection (a)(1) priority claims because they will have already been paid if the statutory order of distribution is followed." *Cardinal Mine,* 916 F.2d at 1091.

Thus, the statute was unclear whether a tardily filed priority claim could be paid under § 726(a)(1). In 1994, Congress amended § 726(a)(1) to address this issue. The amended statute provided:

> [P]roperty of the estate shall be distributed—
>
> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed before the date on which the trustee commences distribution under this section[.]

In *Simon*, the Sixth Circuit noted that the statutory amendment would render *Cardinal Mine* and *Century Boat* obsolete.

*In Simon*, a pre–1994 amendment case, the Sixth Circuit applied *Cardinal Mine* and *Century Boat* in determining that "[a]n untimely priority claimant who has received notice must, in our view, stand in line behind the creditors listed in §§ 726(a)(1) and (2)." *Simon*, 1996 WL 580475 at *4. At the conclusion of the decision, *Simon* mentioned that this issue would no longer arise in post–1994 amendment cases.

> "We note in closing that the problem presented here will not trouble courts much longer. The 1994 Bankruptcy Amendments, which govern cases filed after October 22, 1994, provide that a tardily filed claim is disallowed except to the extent that the provisions of § 726 allow distribution on such claims.... Section 726(a)(1) has been modified to allow first-tier distribution status to timely filed claims and those that are 'tardily filed before the date on which the trustee commences distribution.'"

*Simon*, 1996 WL 580475 at *4.

Because *Cardinal Mine* and *Century Boat* address only the issue of whether an untimely priority claim should be paid under the pre–1994 version of § 726(a)(1), they are not applicable to the instant issue of whether an untimely non-priority claim should be paid under the current version of § 726(a)(2)(C).[5]

### Conclusion

For the foregoing reasons, the Motion is hereby **GRANTED.** If allowed,[6] the FFCS claim is entitled to payment under § 726(a)(2)(C) on par with other general unsecured creditors whose claims were filed prior to the bar date.

---

**5.** Because Congress amended § 726(a)(1) again in 2005, *Cardinal Mine* and *Century Boat* are a further step removed from this case, which is governed by the 2005 amendments. The latest version of § 726(a)(1) provides:

> [P]roperty of the estate shall be distributed—
>
> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title, proof of which is timely filed under section 501 of this title or tardily filed on or before the earlier of—

(A) the date that is 10 days after the mailing to creditors of the summary of the trustee's final report; or

(B) the date on which the trustee commences final distribution under this section[.]

**6.** At the outset of the hearing, counsel for FFCS acknowledged that the issue of allowance under 11 U.S.C. § 502 was not presented for decision.